CURTIS v. BREWER.

1. RESULTING TRUSTS—ENFORCEMENT—RIGHTS OF BONA FIDE PURCHASER.

Testatrix directed land to be sold, the proceeds divided into three equal parts, and two of such parts turned over to her two sons, to be held by them in trust for their children. One of the sons purchased the land, the deed reciting as consideration only two-thirds of the price actually paid. One-third was disposed of as the will directed and the other was paid to the other son, to be held by him in trust according to the provisions of the will. *Held,* that the children of the purchaser were not entitled to one-third of the land as against a bona fide mortgagee from their father.

2. EXECUTORS—SALE—RIGHT TO PURCHASE.

The statute (§ 9095, 3 Comp. Laws), providing that executors may not purchase lands sold by them, does not prevent a purchase by an executor expressly authorized by the will.

Appeal from Calhoun; Hopkins, J. Submitted April 4, 1905. (Docket No. 10.) Decided May 12, 1905.

Bill by Le Grand Curtis and another against Mark B. Brewer and others to restrain the foreclosure of certain mortgages, and for an accounting. Defendant Brewer filed an answer in the nature of a cross-bill praying for the foreclosure of said mortgages. From a decree for defendant, complainants appeal. Affirmed.

*J. M. & J. L. Powers*, for complainants.

*William H. Porter*, for defendant Brewer.

HOOKER, J. Benjamin Curtis died seised of 160 acres of land, leaving a widow, Mary T. Curtis, a daughter, Margaret Abbey Curtis, and two sons, Joshua W. and Onas F. Curtis. Margaret Abbey Curtis died unmarried, after the making of the will of Mary T. Curtis, hereinafter mentioned, but before the death of the testatrix. At the time this will was executed Onas F. Curtis had three children, who are now living, named respectively Mary B. Boughton, Le Grand Curtis, and Mabel G. Curtis (now McKee, she having married since this suit was commenced). Joshua W. Curtis had five children living at the time of his death, named respectively Josephine, Benjamin W., Charles, Martha, and Bertha, and one, named Albert P. Curtis, was born after the will was made. The bill alleges, and the answer is said to admit, and it was conceded at the hearing, that at the time the will was made and at her death Mary T. Curtis was the owner of the undivided two-thirds of the northeast quarter of section 13, etc. Counsel for the defendant claims—and we understand that it is not disputed—that the remainder of the quarter section over and above the portion that belonged to Mary T. Curtis was the property of Onas F. Curtis. Mary T. Curtis' will was executed on December 31, 1883, and her daughter, Margaret Abbey Curtis, died intestate on April 2, 1884. The will of Mary T. Curtis provided for the disposition of the undivided two-thirds of section 13, aforesaid, as follows:

"*Second.* It is my will and I direct that the following described land, to wit: The undivided two-thirds part of the Northeast Quarter of Section Thirteen (13), in Town Two (2) south, of Range Six (6) West, now owned by me and where I now reside, and being in the town of Marshall, Calhoun county, Michigan, if not sooner disposed of by me, be sold within one year after my decease by my executrix and executors, hereinafter named, and their survivors, and a majority of them. And I give and devise the said land to said executrix and executors and the survivors of them in trust for the execution of my will, with full power to sell and dispose of said land at public or private sale within said time, upon such terms and in such manner as to them shall seem meet. And I hereby empower said executors and executrix, or a majority of them, and of the survivors, to sell and convey said land to any one of their number who may desire to become the purchaser at the best price to be obtained, the proceeds of which sale they are to distribute according to the bequests herein contained.

"*Third.* I give and bequeath to my daughter, Margaret Abbey Curtis, her heirs and assigns, one equal third part of all my personal estate which I may own at my decease, after payments of debts as aforesaid. Also I give to my said daughter the use of one-third part of the proceeds of the sale of my real estate during her natural life, and the remainder after her decease is disposed of as provided in paragraphs Eleven (11) and Twelve (12) of this will.

"*Fourth.* I give to my sons Onas F. and Joshua W. Curtis, their heirs and assigns, to each of my said sons respectively, one equal third part of my estate, real and personal, which I may own at my decease, after payment of debts as aforesaid, subject to the power of sale herein given to my executors as to the realty, but in trust as to the capital, of said one-third part given to each of my said sons respectively, which said capital is to be distributed, share and share alike, by my said sons and their successors in the trusts respectively to each of their children on their attaining the age of twenty-one years, as hereinafter expressed and provided. * * *

"*Sixth.* The third part of my estate which I may own at my decease herein bequeathed to my son, Onas F. Curtis in trust as aforesaid, I desire him to invest upon good security, and to pay over to each of his children, Mary B. Curtis, Le Grand Curtis, and Mabel Curtis, in

manner following, that is to say, Five hundred dollars to each of said children on attaining the age of twenty-one years, in case such payment shall be desired by them or either of them, and when the youngest child of my said son, Onas F., including such as may hereafter be born to him, shall come of age, then the share of each child of my said son Onas F., shall be ascertained upon the principal and the deficiency which may appear in the sum already paid to those who have previously or at that time come of age shall be paid them and to the issue of such of them as shall not survive to that period by representation.

"*Seventh.* The third part of my estate which I may own at my decease, herein bequeathed to my son, Joshua W. Curtis, in trust as aforesaid, I desire him to invest upon good security, and to pay over to each of his children, Josephine Curtis, Benjamin W. Curtis, Charles Curtis, Martha Curtis, and Bertha Curtis, in manner following, that is to say, Five hundred dollars to each of said children on attaining the age of twenty-one years, in case such payment shall be desired by them or either of them, and when the youngest child of my said son, Joshua W. including such as may hereafter be born to him, shall come of age, then the share of each child of my son, Joshua W. shall be ascertained upon the principle of an equal division, according to the number of such children, and the deficiency which may appear in the sum already paid to those who previously or at that time have come of age, shall be paid to them and to the issue of such of them as shall not survive to the period by representation.

"*Eighth.* It is expressly understood, and such is my will, that the interest and income on the said shares of my property herein given in trust to my said sons shall belong to them absolutely as their own.

"*Ninth.* It is my will that each of my said sons shall have the power and it is hereby given, to appoint by deed or will a trustee or trustees in his place and stead, or as his successor or successors in the trust hereinbefore expressed and declared, and in default of such appointment when necessary, or in the case of the disability of my said sons respectively, such trust shall dissolve upon the guardian of the minor children of such son or sons so dying or disabled to act respectively at the option of such guardian or guardians upon giving security by him or her to be fixed and approved by the judge of probate of Calhoun county for the time being, or otherwise a trustee or trustees shall be appointed according to law by a competent court.

"*Tenth.* It is my will that no security shall be required of either of my said sons for the performance of the trusts above specified.

"*Eleventh.* I give and bequeath One thousand dollars out of the proceeds of the sale of the one-third part of the two-thirds of the North-East Quarter of Section Thirteen, in Town Two South, of Range Six West, mentioned and described in the preceding second paragraph of this will, after the termination of the life interest therein above bequeathed to my daughter, Margaret Abbey Curtis, to Trinity Church, in the city of Marshall, county of Calhoun, and State of Michigan, upon the trust and confidence to invest the same upon interest upon good security or securities by bond and mortgage upon unincumbered real estate, or in government or municipal bonds, and to appropriate the interest of Five hundred dollars of said money annually if needed to the relief of the poor of the parish, as the vestry of said church for the time being shall direct, and to appropriate the interest of the remaining $500 of the said $1,000 to the diocesan missions of the Diocese of Western Michigan, and to the Domestic and Foreign Missions of the Protestant Episcopal Church of the United States of America, in such proportion between said missions as the vestry of said Trinity Church may deem proper.

"*Twelfth.* The rest and residue of the proceeds of the sale of the said one-third of the two-thirds of said land mentioned in the second paragraph of this will after the termination of the life interest therein given to my said daughter, I give to the Association of the Diocese of Western Michigan upon the trust and confidence to invest the same in good security, as specified in the preceding paragraph, and to appropriate the interest and income thereof to diocesan missions in said diocese, including the building or aid towards building churches therein."

Mary T. Curtis died May 16, 1884. The will was admitted to probate on June 14, 1884. On June 20, 1884, the executors named in the will and appointed by the probate court executed a deed of the undivided two-thirds of the land described in the will to one of their number, Onas F. Curtis, a consideration of $6,400 being named therein. On January 2, 1890, Onas F. Curtis and wife executed a mortgage to Mark B. and Edward G. Brewer, adminis-

trators of the estate of Chauncey M. Brewer, deceased, for $1,441, upon the northeast quarter and the north half of the southeast quarter of section 13, excepting two small parcels on the latter description, which last description was released from the mortgage on April 1, 1890. On March 30, 1891, Onas F. Curtis and wife executed a mortgage to Milford D. Buchanan for $3,600 on the northeast quarter of section 13. Both of these mortgages came to the hands of Mark B. Brewer, who began a foreclosure of the second mortgage, by advertisement, about January 20, 1902, claiming due upon the two mortgages a little over $8,200. On March 3, 1902, the complainants Le Grand Curtis and Mary B. Boughton, children of Onas F. Curtis, filed the original bill in this cause, making all other parties in interest defendants, and procured an injunction against the foreclosure until the rights of the beneficiaries under the will of Mary T. Curtis should be determined by the court, alleging that the land constituted a trust estate charged with the payment of their legacies and those of the children of Joshua W. Curtis, and asking that an account be taken, and a lien therefor decreed, and in default of payment of the same the mortgages be canceled, and that the premises be sold to pay said legacies. An answer in the nature of a cross-bill was filed by Brewer asking a foreclosure of his mortgages. An answer to the cross-bill was filed. The record fails to show either answer by or default against the other defendants, and we discover no allusion to their attitude in the briefs, except as inferences may be drawn from the discussion of the proofs. Upon the hearing the court sustained the answer and cross-bill, and gave defendant a decree of foreclosure as prayed, and the prayer of the original bill was "denied."

The proofs show that the executors paid the legacy to Trinity church and the residue bequeathed to the association of the diocese of Western Michigan. Joshua W. Curtis also received $3,200 in money, which he held in trust for his children. These sums, aggregating $6,400,

were paid by Onas F. Curtis upon his purchase of the property. It is claimed that the price at which it was sold was in reality $9,600, instead of $6,400. It was a sale under the will, and, had the executors received that amount in cash, it would have been their duty to pay over to Onas F. Curtis $3,200, which he would have been authorized to receive in trust for his children. Instead of that course being taken, he took a deed of the land upon payment of $6,400. It is not unreasonable to suppose that this was done with the understanding that he assumed the same liability as would have been created had the money been formally turned over to him. We have little doubt that a court of equity would hold him liable as a trustee, and it is not certain that, as between his children and himself, the claim would not be enforced against the premises. The Brewers are in a different position, however. The will and the probate proceedings show that the administrators were authorized to sell, and that Onas F. Curtis might lawfully buy, this land, and that it was sold to him for $6,400, which sale was approved, and which sum appeared in the deed to have been the consideration paid. This amount was actually paid, and there was nothing to indicate to Brewer that the trust was not being faithfully carried out at the time the mortgages were given by Curtis. It is contended that Onas F. Curtis obtained the absolute legal title to but two-thirds of the interest of Mary Curtis, and that as to the other third his title was qualified by a trust, first, because Onas F. Curtis could not purchase the land from the executors, of whom he was one, and, second, because he did not pay for it. We are of the opinion that Onas F. Curtis might purchase from the executors, in view of the express provisions of the will, which conferred the power upon them to sell to one of their number. We think that 3 Comp. Laws, § 9095, has no application to this case. The testatrix saw fit to authorize a sale to one of the executors, and this she had the right to do.

The defendants relied upon the records referred to,

which they had the right to do. They were under no obligation to inquire whether Onas F. Curtis had faithfully discharged the trust confided to him in his disposition of the fund.

The decree is affirmed, with costs.

MOORE, C. J., and MCALVAY, GRANT, and MONTGOMERY, JJ., concurred.