Alt,fin, J.
 

 The controlling question in this case
 
 *329
 
 deals with the proper construction to be placed upon the will of John Yorndran, deceased, which reads in its pertinent portions as follows:
 

 “Item Two (2) I do devise and bequeath to my beloved wife, Terece Yorndran, the use of all my estate, both chattel and real, so long as she may live.
 

 “Item Three (3) After the death of my said wife, it is my will, that my two sons, Joseph A. Yorndran and Herman J. Yorndran, shall have the privilege to buy my farm consisting of one hundred and sixty acres of land, being the south east quarter of section number twenty two (22), in township number eighteen (18), of range number twenty one (21) in Cranberry township, Crawford county, Ohio, they my said sons to pay the indebtedness on said premises, which at this time is eleven hundred and twenty ($1120) dollars, to pay $125 for the burial expense of myself, the masses for myself, to pay $125 for the burial expenses of my wife and masses for her, also to pay to each of my children the following sums of money — to my son John M. Yorndran five hundred ($500) dollars, to my son Michael A. Yorndran, five hundred ($500) dollars, to my son Charles J. Yorndran five hundred ($500) dollars, to my daughter Katherine R. Kintz, seven hundred and fifty ($750) dollars, to my daughter Mary Magdalene Muhr, seven hundred and fifty ($750) dollars, to my daughter Clara Anna Naus, seven hundred and fifty ($750) dollars. Provided that if any one of my children shall have died, then the share of such child shall go to the child or children of such' deceased son or daughter, if any, but in the event such deceased
 
 *330
 
 son or daughter leave no child or children, then the share of such son or daughter shall be divided equally with my living sons and daughters. It is also provided that my said sons Joseph A. and Herman J. shall not be required to make any payments to my other sons and daughters until one year after my decease, and that of my wife, at which time each unpaid share shall commence to draw interest. My said sons shall be required to make payments of $400 per annum or more each year thereafter, paying oft my daughters first, commencing with Mary Magdalene Muhr, if payment of share can not be paid in full each year, then my said sons shall give their notes for the balance of such share, making one share paid by cash and note each year until all are paid. After the first year all shares shall bear five per cent, interest per annum.
 

 “Item Four (4) In the event my said sons Joseph A. Vorndran and Herman J. Vorndran do not desire to purchase said premises, on the conditions above set forth, then it is my will that said land be sold on as favorable terms as possible, and the proceeds after paying off of the indebtedness on said premises, and $125 for my funeral expenses and masses, and $125 for wife’s funeral expenses and masses for her, be paid out and divided as follows: My daughters, Catherine R. Kintz, is to receive ($250) two hundred and fifty dollars, my daughter Mary Magdalene Muhr is to receive two hundred and fifty ($250) dollars, and my daughter Clara Ann Naus, is to receive two hundred and fifty ($250). After these payments have been made, the balance and residue of iny estate is to be di
 
 *331
 
 vided equally among all my children, John M. Vorndran, Michael A. Vorndran, Charles J. Vorndran, Joseph A. Vorndran, Herman J. Vorndran, Catherine R. Kintz, Mary Magdalene Muhr, and Clara Anna Naus, each to receive share for share. Provided if any one or more of my said children, shall have sooner died, then the share of such son or daughter so deceased, shall go to the child or children of such deceased son or daughter if any there be, but if there is no child or children, surviving such son or daughter, then such share shall be divided equally with all my surviving children. I desire here to state that the reason my daughters are to receive each ($250), more than each son, is that my daughters, all except Clara Anna Naus, lived with me and worked after becoming of age.
 

 “Item Four (4) I do nominate and appoint my sons Joseph A. Vorndran and Herman J. Vorndran, executors of this my last will and testament, empowering them to settle up my estate according to the provisions herein, and if it becomes necessary to sell said real estate, they are hereby empowered to sell and convey by a good and sufficient deed any and all real estate, to which I may die seized.
 

 “In witness whereof I hereto subscribe this 6th day of May, 1902.
 

 “John Vorndran.
 

 “Subscribed and acknowledged by said John Vorndran, to be his last will and testament, in our presence at his request, and signed by us in his presence, this 6th day of May, 1902.
 

 “F. J. Miller,
 

 “H. M. Cory,
 

 “New Washington, 0.”
 

 
 *332
 
 A codicil was later executed by the testator, which does not affect the main provisions in the will, nor the question before us, and hence we do not quote it.
 

 John Vorndran during his lifetime was married twice, leaving children from each marriage. His second wife died prior to his death, and two children from the first marriage, the decedent, Herman J. Vorndran, and the plaintiff, Clara Ann Naus, survived John Vorndran. The defendants in error are children of the last marriage.
 

 Subsequent to the death of John Vorndran and the probate of his will, Joseph and Herman Vorndran paid the several amounts specified under item 3 of the will, administered the estate of John Vorndran, as his duly appointed and qualified executors, and filed their final account, which account was duly approved and confirmed by the probate court. Later the probate court of Crawford county issued to Herman Vorndran and Joseph Vorndran a certificate stating that they had complied with the provisions of the will. This certificate was presented to the county auditor of Crawford county, who thereupon transferred the title to the farm from the name of John Vorndran to that of Joseph Vorndran and Herman Vorndran; the certificate being recorded in the recorder’s office of Crawford county, Ohio.
 

 Herman Vorndran died intestate, and Joseph Vorndran was appointed administrator of Herman’s estate. Herman was a bachelor and childless, and his nearest of kin is his sister of the whole blood, Clara Ann Naus.
 

 If the land in question passed to Herman and to
 

 
 *333
 
 Joseph Vorndran as nonancestral property the surplus proceeds from the sale of Herman’s interest belong to the sister of the whole blood. If the land passed to Herman and Joseph as ancestral property, the proceeds should pass in equal shares to all of Herman’s brothers and sisters, both of the whole and half blood. Sections 8573 and 8574, General Code.
 

 The question is not whether this was a transfer by purchase, for purchase includes devise. Bouvier’s Law Dictionary;
 
 Allen
 
 v.
 
 Bland,
 
 134 Ind., 78, 33 N. E., 774;
 
 Carder
 
 v.
 
 Bd. of
 
 Comrs.
 
 of Fayette County,
 
 16 Ohio St., 369. It is conceded that the title was not acquired by descent, nor by deed of gift from an ancestor, and hence the sole question is whether it was' title acquired by devise.
 

 Certain Ohio cases have construed wills somewhat similar to the one in question.
 
 Case
 
 v.
 
 Hall, Admr.,
 
 52 Ohio St., 24, 38 N. E., 618, 25 L. R. A., 766;
 
 Wheatcraft
 
 v.
 
 Hall,
 
 106 Ohio St., 21, 138 N. E., 368. In
 
 Case
 
 v.
 
 Hall,
 
 the will read:
 

 “I give, bequeath and devise to my son all the remainder of my real estate, * * * after he shall pay * * *.”
 

 In
 
 Wheatcraft
 
 v.
 
 Hall,
 
 which much more closely resembles the instant case upon the facts, the will read: “It is my will that my son * * * shall have the farm * * * by paying” certain specified sums to members of the testator’s family. In each of these cases the disposition of the property was held to constitute a devise and not a conveyance. It will be observed that there was a substantial difference between the two cases just cited in the disposing clauses of the wills respectively
 
 *334
 
 construed. In
 
 the Case
 
 v.
 
 Hall
 
 decision, “I give, bequeath and devise” indicated that the testatrix intended the disposition of the property to constitute a devise. In the
 
 Wheatcraft case
 
 the phrase was, “It is my will that my son * # * shall have the farm
 
 *
 
 # * by paying”
 
 the
 
 amounts specified. In the instant case the will states:
 

 “It is my will, that my two sons, Joseph A. Yorndran and Herman J. Yorndran, shall have the privilege to buy my farm *
 
 *
 
 * they my said sons
 
 to
 
 pay * * *.”
 

 In item 4 the testator declares that in the event his sons Joseph and Herman do not desire “to purchase said premises, on the conditions above set forth, then it is my will that said land be sold on as favorable terms as possible.” Four times in the disposing clauses of the will the testator characterizes the contemplated transaction as a sale, for no doubt he was using the word “purchase” in the sense in which it is used by the ordinary layman, and not in the legal sense, above mentioned, that “purchase” includes devise. Later he provides that, if it becomes necessary to “sell” the real estate, his executors are “empowered to sell and convey by a good and sufficient deed any and all real estate, to which I may die seized.”
 

 Surely these reiterations of the words “buy,” “sold,” “pay,” and “purchase” indicate that the testator intended the transaction to constitute a conveyance. His main purpose was to secure the funds from which the bequests were to be paid. In order to do that he was willing to have his sons buy the property if they so desired. He wished his sons to have the first chance to buy the farm,
 
 *335
 
 but he also contemplated that some one else might buy it, and was willing that some one else should buy it, if necessary, to raise funds for the various bequests. The amounts to be paid certainly aggregated a substantial price for the property, but we do not consider this feature controlling.
 

 If the will had given any other person than a relative the privilege to buy this land, it could not have been doubted but that the transfer did not arise out of a devise and that the land passed as nonancestral property. Why should the transaction constitute a devise simply because the sons were given the first privilege to buy the land?
 

 That a testator has the power to stamp the disposition of real property with the characteristic of a conveyance for consideration, rather than with the characteristic of a deed of gift, even though no consideration passes, has recently been held by this court.
 
 Gardner
 
 v.
 
 Kern,
 
 115 Ohio St., 575, 155 N. E., 134, declared in the syllabus that the grantor has the right to impart to his deed the descendible quality of the title that he conveys.
 

 Now this testator had the right to impart to this transaction the descendible quality of a transfer of title not by devise, and that he intended to do so is apparent upon the face of the will.
 

 However, it is claimed here that, since the testator nominated his sons as executors, and empowered them to sell and convey the land by good and sufficient deed, if it became necessary to sell the real estate, the testator evidently meant the property to pass to his sons, if they should take the farm, by devise. In other words, the defendants in error contend that the expression, “if it
 
 *336
 
 becomes necessary to sell,” relates only to the sale of the property to some other person than to Herman and Joseph, urging in support of this view that the giving of a deed by Herman and Joseph as executors to themselves as individuals would be nugatory, for the deed would be invalid.
 

 With this contention we cannot agree. It is true that the general rule is that an executor cannot sell to himself as an individual land belonging to the estate of his decedent.
 
 Piatt
 
 v.
 
 Longworth’s Devisees and Executors,
 
 27 Ohio St., 159;
 
 Caldwell
 
 v.
 
 Caldwell,
 
 45 Ohio St., 512, 15 N. E., 297. This will, however, included a plain provision that the two sons had the privilege of buying the farm, and under those circumstances the deed by the executors to themselves as individuals, showing compliance with the terms of the will, would be valid.
 

 In 3 Sehouler on Wills (6th Ed.), Section 2433, p. 2220, it is said:
 

 “Generally an executor selling real estate under a testamentary power cannot purchase at the sale, either directly or indirectly, unless the will gives him such right
 
 * *
 

 In re Brittain’s Estate,
 
 28 Pa. Super. Ct., 144; 3 Woerner, American Law of Administration (3d Ed.), p. 1695, Section 487.
 

 In the
 
 Brittain case, supra,
 
 it is stated in the syllabus:
 

 “No person acting in a fiduciary'character can purchase at his own sale, directly or indirectly, or acquire by purchase any interest in the trust estate, without the consent of the beneficiary or others interested therein, or of the court having
 
 *337
 
 jurisdiction of the trust, * * * or unless, if selling under a power, he is by its terms permitted to purchase,”
 

 Further authorities which support this precise proposition are
 
 Springer’s
 
 Estate, 51 Pa., 342, and
 
 Curtis
 
 v.
 
 Brewer,
 
 (1905) 140 Mich., 139, 103 N. W., 579.
 

 Under the power given in the will herein construed, the executors were given the express power to purchase the land.
 

 Possession of a valid deed does not in and of itself constitute title. It constitutes only evidence of title. In this case evidence of title was given by the certificate of compliance issued by the probate court. The executors no doubt could have issued a deed to themselves, but, having failed to do so, they still have title under the provisions of the will, by compliance with the requirement that they buy the land.
 

 Hence we conclude that in the instant case the property passes not by devise, and the judgment of the Court of Appeals must be reversed upon that point. As this holding is in direct conflict with the decision in
 
 Wheatcraft
 
 v.
 
 Hall,
 
 106 Ohio St., 21, 138 N. E., 368, it follows that the decision in the
 
 Wheatcraft case
 
 must be overruled. Finding no error in the record as to the order of sale, we affirm the judgment upon that feature of the case.
 

 Judgment affirmed in part and reversed in part.
 

 Marshall, C. J., Kineade and Robinson, JJ., concur.
 

 Day, Jones and Matthias, JJ., dissent.