Wallace's Estate.

334

Argued January 15, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SADLER, JJ.

*B. H. Ludlow,* of *Powell & Ludlow,* for appellants.— It is a rule of public policy that a purchase by an executor at his own sale is voidable; there must be full knowledge of all the circumstances, after a deliberate examination, and the price must be adequate: Grim's App., 105 Pa. 375; Spencer's App., 80 Pa. 317; Miggett's App., 109 Pa. 520; Diller v. Brubaker, 52 Pa. 498; Brownfield's Est., 193 Pa. 151.

The burden of proof is on the purchasing executor to show that the agreement was advantageous to the beneficiary, and that he brought everything to the knowl-

edge of the other party which he himself knew: Green-field's Est., 14 Pa. 489; Wistar's App., 54 Pa. 60; Darlington's App., 86 Pa. 512; Darlington's Est., 147 Pa. 624.

The market value of a particular piece of real estate is to be measured by the price usually given for such property in that neighborhood, making due allowance for differences of position, soil and improvement: Searle v. R. R., 33 Pa. 57; Rea v. R. R., 229 Pa. 106.

Where the direction to pay or divide constitutes the bequest, the vesting of the interest itself is postponed, and not merely the possession or enjoyment of it: Rosengarten v. Ashton, 228 Pa. 389; Groninger's Est., 268 Pa. 184; Kountz's Est., 213 Pa. 390.

*E. A. Howell,* with him *Kingsley Montgomery* and *J. H. Ward Hinkson,* for appellee.—Where a decedent's will gives one of two executors the exclusive right to buy the principal asset of the estate, at a price to be fixed by the executors, and he exercises that right in accordance with the will, the consent of the heirs is not necessary, or their knowledge as to values material: Paterson v. Lennig, 118 Pa. 571; Barber's Est., 142 Pa. 476; Keller's App., 8 Pa. 288; Stewart's App., 110 Pa. 410; Neff's App., 57 Pa. 91; Semple's Est., 189 Pa. 385.

The estates were vested: Hood v. Maiers, 255 Pa. 128; Bair's Est., 255 Pa. 169; Groninger's Est., 268 Pa. 184; Jenning's Est., 266 Pa. 60; Marshall's Est., 262 Pa. 145; McCauley's Est., 257 Pa. 377.

OPINION BY MR. JUSTICE WALLING, February 5, 1930:

John A. Wallace, of Chester, died testate, March 23, 1915, the owner of a partnership interest in the Chester Times and Morning Republican, newspapers published in that city. His partners therein were Governor Sproul and Charles R. Long. Wallace and Sproul each owned eleven twenty-sixths and Long four twenty-sixths of the business. Mr. Wallace left a widow, one son and three

336

daughters and clause three of his will, executed June 16, 1914, provides: "It is my will that my son Frank C., if he so desires, shall go into the Times and the Morning Republican offices as the sole representative of my estate, with full recognition there as such, at such a salary, to be paid from the income of my estate, as may by the executors or the survivor of them be considered just to him and to the other heirs." The will names the Cambridge Trust Company, of Chester, and the son Frank, as executors and gives them his entire estate in trust. It was evidently the thought of Mr. Wallace that, at least for a time, the newspaper business would be continued with his estate as a partner; but the partnership having been dissolved by his death, the surviving partners declined to do so. The testator had in mind the son's purchase of his interest in the business and clause sixth of the will provides: "It is my will that my son Frank C. shall have the first opportunity to purchase my interest in the Chester Times and The Morning Republican at such price and on such terms as shall in the judgment of my executors be fair and just to the other heirs. My son Frank C., in case of such purchase by him, to be allowed a credit equal to his share of said interest, and, if no other terms be mutually agreed upon, he is to pay the balance of the purchase money in installments or in one sum within five years from the date of purchase; deferred payments to bear interest at six per cent per annum; should my son Frank C. fail or decline to purchase said interest within five years after the death of my wife, then it is my will that said interest be sold for such price and for such terms as may seem best to my executors." While the will gives Frank until five years after his mother's death to purchase the interest, yet he might do so thereunder at any previous time, and the refusal of the surviving partners to continue the business with the estate as a partner necessitated a prompt decision of the question of Frank's purchase. He was favorable to the purchase and all the

owners of the business decided to incorporate it, which was done. The capital stock was placed at $130,000, divided into 1,300 shares of $100 each; of which Sproul held 550 shares, Long 200 shares and Frank C. Wallace, representing his father's estate, 550 shares. The partnership property passed to the new corporation at the valuation of $130,000. While an executor may become a stockholder in a corporation (Act of April 22, 1889, P. L. 42, 1 Purdon's Digest (13th ed.) 779, reincorporated and extended in the Fiduciaries Act of June 7, 1917, P. L. 447, section 42, P. L. 509, yet there is no law compelling surviving partners to join with the executor in the formation of a corporation.

To promote the formation of the corporation and thus the continuance of the business as well as to save the Wallace estate from an unfortunate situation, testator's widow and children, all of whom were sui juris, upon due consideration, on September 20, 1915, entered into an elaborate written agreement in the nature of a family settlement, executed, sealed and acknowledged by them and by the executors. Therein the widow and four children of the testator as parties of the first part, the executors as parties of the second part and Frank C. Wallace as party of the third part, mutually agreed, inter alia, and in effect, that the first parties, having examined and being familiar with the standing and value of the newspaper properties in question, favor the new corporation and authorize the trustees to sell testator's interest in the newspaper properties to Frank C. Wallace for $55,000, the par value of the proposed stock, and that a' failure to do so would work a hardship to the estate of John A. Wallace. Further agreeing that, in payment for the property, Frank should give the executors his note for the $55,000 payable in five years, with interest at six per cent, payable quarter yearly. His 550 shares of the stock to be held by the executors as collateral to the note and they to receive the dividends thereon while it remained unpaid. With all of this Frank faithfully

complied and paid the note in full in 1921. The agreement also sets forth that the interest of testator's estate in the newspaper properties should be stated at $55,000 in the inventory of his estate. The first parties also agreed therein to join in a bill of sale of the property to Frank for the consideration of $55,000 and did so by a formal instrument duly executed the same day. The first parties also therein agreed to indemnify and save the executors harmless from all loss or damage which might result from the sale of the properties to Frank and never to make any claim against them on account thereof, except for what might be received from him in payment of the note. The agreement further reserves to Frank the right to participate in the $55,000 as a legatee under his father's will.

Frank C. Wallace died testate January 5, 1927, leaving a widow but no issue, and his mother, the life tenant, died June 23, 1927. The Cambridge Trust Company, as surviving executor filed the first account in June, 1927, and in July of the same year filed a second account. Pursuant to the agreement, testator's interest in the newspaper properties had been inventoried at the $55,000 and in March, 1929, by leave of court, the appellants, who are the three daughters of John A. Wallace, filed exceptions to the accounts on the ground of an under valuation of his interest in the newspaper properties, which, they asserted, should have been inventoried at $110,000. The orphans' court, upon very careful consideration, dismissed the exceptions and the three daughters have brought separate appeals.

The record discloses no error. Appellants' contention that the purchase by an executor at his own sale is voidable, and casts upon him the burden of showing that full disclosures were made and a fair consideration paid, is sound, but inapplicable here. The rule forbidding the purchase by an executor does not apply where the will expressly provides otherwise (24 C. J. 175) and this has been held to be so even where such purchase is forbidden

by statute: Curtis v. Brewer, 140 Mich. 139, 103 N. W. 579. The executors in the instant case made this sale under express authority given them in the above quoted sixth clause of the will which says the sale shall be made "at such price and on such terms as shall in the judgment of my executors be fair and just to the other heirs." It is admitted there was here neither fraud, accident nor mistake; hence, the judgment of the executors, exercised as authorized in the will, is conclusive. We cannot declare that Frank shall not have that which the will expressly says he may have. The testator might have given his interest in the newspaper business to his son or might have named the price and no one can deny his right to authorize the executors to do so. Moreover, the price and terms were adjusted by both executors, the Cambridge Trust Company, composed of men of high standing and entirely disinterested, being one. Now, after nearly fifteen years increase of the business and a remarkable rise in property values, in a rapidly growing city, it is easy to challenge the judgment of the executors.

Again, we cannot disregard the fact that appellants are now complaining of the very act in which they joined and are seeking to surcharge the surviving executor for the doing, admittedly in good faith, of what they authorized it to do and agreed to save it harmless for doing. Whether the part they took to bring about the sale in 1915 would constitute an estoppel, we do not decide, as undoubtedly the executors could have consummated the sale without their participation.

Furthermore, if appellants ever had any cause of complaint it is barred by laches. They could at any time have compelled the filing of an account and asked for the same surcharge but they waited fourteen years. Meantime, Governor Sproul, Frank C. Wallace, his mother, the officer of the accountant trust company, who had charge of this matter, and others who had knowledge of the transaction, had died. The property in-

volved, including two pieces of real estate, had so greatly grown and increased in value that a fair estimate of its worth fifteen years ago would be almost impossible to ascertain. Nothing approaching a fair trial could be had at this late day, and the orphans' court, being a court of equity, should not be called upon to undertake it. "The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding": Townsend v. Vanderwerker, 160 U. S. 171. And see Kinter v. Commonwealth Trust Co., 274 Pa. 436. "The rule [that equity will not enforce a stale claim] is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible": from opinion of Chief Justice FULLER, in Hammond v. Hopkins, 143 U. S. 224, 250. And see Patton v. Commonwealth Trust Co., 276 Pa. 95. Equity will not grant relief after an unreasonable delay: Hemmick v. Standard Oil Co., 91 Fed. 332. It is worthy of note that these appellants recently filed a bill in equity in the United States District Court to have Frank declared a trustee of the stock for his father's estate, which, upon due consideration, was dismissed on the ground of laches, and that this was affirmed by the circuit court of appeals: Kitts v. Hanna, 29 Fed. (2d series) 1010, 1013.

It is also urged that the interest of Frank C. Wallace, under his father's will, was contingent and as he predeceased his mother, it vested in the daughters. This is untenable. Taking the will as a whole, his interest was clearly vested. The fifth clause of the will provides, inter alia: "Within two years from the death of my

wife, it is my will, and I so direct, that, except as provided for in paragraph six hereof, my entire estate be settled; incidental to said settlement, and for the purposes for carrying out the same, I hereby empower, authorize, and direct my executors to sell all my real and personal estate, publicly or privately, upon such terms as to my executors may seem fair; and to make, execute, and deliver deed or deeds for my real estate to the purchaser thereof, in fee simple, free from liability on the part of such purchaser or purchasers, to see to the application of the purchase money; the distribution of my said estate to be made to my children share and share alike." Clause sixth above quoted provides that in case Frank purchase the interest in the newspaper business he shall be allowed a credit equal to his share of said interest. Then clause ten of the will states: "In case of the death of any of my children prior to my death, the issue of the one so dying is to take the share of the parent, and in case of any of my daughters dying without issue and leaving a husband, said husband to take one-fourth of what would have been his wife's share in my estate. In case of my son Frank C. dying before my death, and without issue, his widow to receive a widow's share of what he would have received from my estate had he survived me." These express provisions that Frank, in case he survived his father, should have a share of the estate abundantly show that the testator intended that Frank's interest should be vested. That the legacies here were vested is shown by many recent decisions of this court. In Groninger's Est., 268 Pa. 184, the present Chief Justice, speaking for the court, at page 188, says: "It is established with us that, when a remainder following a life estate is given to one's heirs, the heirs living at the death of the testator, and not those at the death of the life tenant, take, unless the will itself contains convincing evidence of a contrary intent." And Morris's Est., 270 Pa. 120, as summarized, holds that "A gift of real estate to a wife with direc-

tion that after her death it should be 'equally divided between testator's surviving children each to share and share alike,' shows an intent to give the property to the sons and daughters who survived at testator's death, and not to those merely who might be living at the time of the widow's death." See also Marshall's Est., 262 Pa. 145; Jenning's Est., 266 Pa. 60. In the case at bar the children's legacies were payable at a future time certain to arrive, not subject to condition precedent, and to persons in esse at the time of testator's death and capable of taking when the time arrived, and hence, were vested: McCauley's Est., 257 Pa. 377; Bair's Est., 255 Pa. 169. The law favors a vested legacy, especially where children are being provided for (Wengerd's Est., 143 Pa. 615), and if there were doubt here, which there is not, it should be resolved in favor of a vested estate. See Bair's Est., supra; Smith's Est., 226 Pa. 304; Amelia Smith's App., 23 Pa. 9.

Some complaint is made as to the rejection of the testimony of certain witnesses called by appellants to show the value of the property, on the ground that the witnesses failed to properly qualify. This we will not review, (a) because not suggested in the statement of questions involved and (b) because the rejected testimony could not in any event change the result of the litigation. It is unnecessary to refer separately to the thirty-nine assignments of error.

The decree is affirmed and the appeals therefrom are dismissed at the cost of the respective appellants.