Roy K. **FURR** and Don G. Furr, Executors, Appellants,

v.

Shelley Furr **HALL**, Appellee.

No. 8747.

Court of Civil Appeals of Texas, Amarillo.

June 30, 1977.

Rehearing Denied July 25, 1977.

Crenshaw, Dupree & Milam, James H. Milam and Cecil C. Kuhne, Jr., Lubbock, for appellants.

Nelson, McCleskey, Harriger & Brazill, Lubbock, McGinnis, Lochridge & Kilgore, Morgan Hunter, Austin, for appellee.

REYNOLDS, Justice.

Resolving the ultimate issues, the trial court correctly determined that two of the three executors' proposed redemption of the estate's shares of stock by corporations which the two executors successfully controlled and managed as directors and stockholders, as well as officers in two of the corporations, would violate V.T.C.A., Probate Code § 352 (1956), and would be enjoined. Affirmed.

Roy Furr died 13 June 1975, survived by his wife and their three children. His will, with an attached codicil, named his children, Roy K. Furr, Don G. Furr and Shelley Furr Hall, who are devisees under the will and the beneficiaries of a trust established by the codicil, independent executors of his estate in the event his wife, Lela Rosellen Furr, should die, resign or be unable to act as executrix. When Mrs. Furr declined to qualify as the executrix, Roy K. Furr, Don G. Furr and Shelley Furr Hall, referred to for simplicity as Roy, Don and Shelley, respectively, duly qualified as joint independent executors and executrix of their father's estate.

At Roy Furr's death, the community estate had assets of approximately $7,000,000, the community debts were approaching $5,000,000, and sufficient cash was not available to satisfy the debts. Among the assets of Roy Furr's estate were shares of stock of Furr's, Inc., Furr's Realty Company, Furr's Cafeterias, Inc., and Farm Pac Kitchens, Inc. Two of the corporations, Furr's, Inc., and Farm Pac Kitchens, Inc., were beneficiaries of insurance policies on the life of the decedent approximating $3,400,000.

After several meetings, executors Roy—who is president and chief executive officer of Furr's, Inc., and Furr's Realty Company, as well as a director of and a stockholder in all of the named corporations—and Don—who is chairman of the board and chief executive officer of Furr's Cafeterias, Inc., as well as a director of and a shareholder in all of the named corporations—proposed to receive the life insurance proceeds in redemption of certain shares of the Furr corporations' stock from the estate to generate enough cash to pay the estate's debts. Without the presence or participation of Roy and Don, the board of directors of Furr's, Inc., and Furr's Cafeterias, Inc., voted to redeem shares of their stock from the estate at a price the court found to be the fair market value to the estate. (Prior to trial, Furr's Realty Company and Farm Pac Kitchens, Inc., merged, and Furr's Realty Company became the surviving corporation.)

Thereupon, Shelley, in her capacity as a devisee, brought this action, alleging that, because of Roy's and Don's individual ownership of capital stock in and fiduciary relationships to the purchasing corporations, the proposed redemption would constitute a sale by independent executors to themselves prohibited by V.T.C.A., Probate Code § 352 (1956). She sought a declaratory judgment to that effect and a perpetual injunction preventing Roy and Don, in their capacities as independent executors, from selling the shares of stock to the corporations.

After a hearing without the intervention of a jury, the trial court rendered a declaratory judgment decreeing that the proposed sales, if consummated, would violate V.T.C.A., Probate Code § 352, which, in part, reads:

> The personal representative of an estate shall not become the purchaser, directly or indirectly, of any property of the estate sold by him, or by any co-representative if one be acting.

Finding that Shelley had no adequate remedy at law, the court perpetually enjoined Roy and Don, as independent executors of the estate of Roy Furr, from

> . . . selling or transferring to Furr's, Inc., Furr's Realty Company and/or Furr's Cafeterias, Inc., any of the property belonging to the Estate of Roy Furr, Deceased, so long as they are an officer, director or stockholders of such corporation that is purchasing such property or redeeming such stock unless Plaintiff [Shelley] consents in writing to such sale or redemption by Furr's, Inc.,

Furr's Realty Company and/or Furr's Cafeterias, Inc. of the property or capital stock or such corporation belonging to the Estate of Roy Furr, Deceased.

Executors Roy and Don have appealed, presenting twenty-seven points of error. In the first two of these, they urge that the court erroneously enjoined the proposed sale because (1) Roy and Don do not own, either individually or jointly, a controlling interest in any of the purchasing corporations, and (2) neither Roy nor Don participated in the purchasing corporations' decisions to redeem the stock.

The prohibition stated in V.T.C.A., Probate Code § 352 is the statutory expression of the general rule that an executor or administrator may not purchase at his own sale property in the decedent's estate, 31 Am.Jur.2d, Executors and Administrators, § 383, which appertains in the United States and in the British Empire. 21 Am. Jur., Executors and Administrators, § 622. The statute implicitly recognizes that an independent executor, occupying the position of fiduciary in relation to the estate, must be possessed of an independent and impartial judgment as to the advisability of selling assets of the estate and, if it be advisable, in determining the price at which to sell. It seeks to avoid the possibility of fraud and the temptation of self-interest. See 105 A.L.R. 450 and authorities therein cited. The same rationale was expressed by the Supreme Court in *Southern Trust & Mortgage Co. v. Daniel*, 143 Tex. 321, 184 S.W.2d 465, 466–67 (1944), in disapproving a trustee's public sale of land described in the deed of trust to a corporation of which he was an officer, director and stockholder, by this language:

> It cannot be said that the trustee might not have sought and obtained a much higher bid from the corporation itself had he not been one of its officials. As an officer of the corporation the temptation to make an advantageous purchase of the property would be as great as, if not greater than, it would were he purchasing from himself individually.
>
> * * * * * *

. . . The opportunity for conflict between interest and duty is the vicious ingredient. The presence of the opportunity in this case is too unmistakable and certain to overlook.

* * * * * *

. . . (W)hat we decline to approve is a practice which affords an opportunity for and creates a temptation to disloyalty. Were that practice given the approval of this court, then instances of disloyalty could rise under circumstances in which it would be impossible to make proof thereof. That consideration affords sufficient grounds for condemning the practice altogether.

The statutory prohibition against self-dealing announced by § 352 of the Probate Code is clear and unambiguous and does not provide for any exception of its terms. *7-Up Bottling Company of Austin, Inc. v. Capital National Bank in Austin*, 505 S.W.2d 624, 627 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). In *7-Up*, the individual who was coindependent executor with a bank and who also was an officer, director and stockholder of a corporation which exercised its option to buy the decedent's stock in the corporation was said by the court to be purchasing, directly or indirectly, property of the estate sold by him. The dual relationship, irrespective of the equities pleaded and raised, fell within the prohibition of V.T.C.A., Probate Code § 352.

Similarly, the provisions of the statute prohibiting the guardian from purchasing his ward's property are mandatory and admit of no exceptions whatever. *Wall v. Wall*, 172 S.W.2d 181, 185 (Tex.Civ.App.—Amarillo 1943, writ ref'd w.o.m.). By extension of that statute, the next friend cannot purchase a minor's property in a court ordered sale. *Mitchell v. Thompson*, 292 S.W. 862, 863 (Tex.Comm'n App.1927, holding approved).

Beyond that, the trial court found that Roy and Don successfully control and manage the corporations and would control the corporations redeeming the shares of stock. By their fourteenth point of error,

executors Roy and Don attack these factual findings as immaterial and irrelevant, not supported by the evidence, and against the great weight and preponderance of the evidence. However, other than a statement that Roy and Don are minority stockholders, there is no record referenced statement of the facts directed to the point or a discussion of the facts and authorities relied upon as required by Rule 418(c), Texas Rules of Civil Procedure, to maintain the point. *In the Matter of D_____R_____ D_____*, 537 S.W.2d 133, 134 (Tex.Civ.App. —Amarillo 1976, no writ). Where, as here, Rule 418(c), T.R.C.P., is not complied with, this court has no duty to independently search the 1,020 pages of the statement of facts to ascertain if the point of error has merit. *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197, 200–01 (1955). We do state, however, that from our review of this record, including sixty-six exhibits in addition to the 1,020 page statement of facts, in connection with the appeal, we cannot say, with due regard for the trial court's prerogative in assessing the evidence, that these findings are so against the great weight and preponderance as to be manifestly wrong and unjust.

■ Given these principles and these findings of fact, the trial court correctly determined that under the circumstances where the executors' proposed sales of the estate's shares of stock, in the form of stock redemption, to corporations which the executors control and manage in their capacities as officers, directors and stockholders are sales prohibited by V.T.C.A., Probate Code § 352, regardless of whether or not the executors, individually or jointly, own a controlling interest in the corporations or participated in the corporations' decisions to redeem the stock. Points one, two and fourteen are overruled.

■ The third point is that the proposed stock redemption, even if a direct or indirect sale to Roy and Don in violation of § 352 of the Probate Code, is nevertheless permissible because authorized by the decedent's will. Executors Roy and Don argue that because their father's will grants the trustees of testamentary trusts created therein all of the powers and rights of owners in fee of the trust estates and grants the executors the same rights, powers, privileges, discretions, duties and responsibilities as are conferred upon the trustees under the will, the executors are, therefore, authorized to make direct or indirect sales to themselves. Cited as authority for the argument is the *In re Wallace's Estate*, 299 Pa. 333, 149 A. 473, 475 (1930), holding that the rule forbidding purchase by an executor at his own sale does not apply where the will specifically authorizes the purchase, and the *Curtis v. Brewer*, 140 Mich. 139, 103 N.W. 579, 582 (1905), statement that this has been held to be so even where such purchase is forbidden by statute.

The argument loses its persuasiveness when the will of Roy Furr is read in the light of the Texas Trust Act of 1943, Vernon's Ann.Civ.St. art. 7425b–1 *et seq.* (1960). Section 12 of the Act has the restrictions that

> A trustee shall not buy nor sell, either directly or indirectly, any property owned by or belonging to the trust estate, from or to itself or an affiliate; . . . or from or to himself, a relative, employer . . . or other business associate;
>
> . . .

Section 22 of the same Act authorizes the trustor to insert provisions in the trust instrument to relieve the trustee from any of the duties, restrictions and liabilities which are otherwise imposed on the trustee by the Act.

The trustees' testamentary grant of powers and rights to which executors Roy and Don refer are those contained in the will's provisions for separate trusts to benefit the lawful issue of Roy, Don and Shelley if they, or any of them, be deceased at Roy Furr's death. Although these trusts never became effective, they contain provisions granting the trustees of each trust broad powers of management which, consistent with the grant, were to be exercised as if the trustees "were the owner in fee simple of both the legal and equitable title of such

trust estates." The will then provides that the independent executors or executrix are granted, in addition to the usual rights, powers and duties of an independent executor, "the same rights, powers, privileges, discretions, duties and responsibilities as are conferred upon the Trustees."

Yet, the language of the will itself does not go so far as to negate the restrictions in Section 12 of the Trust Act by specifically authorizing the trustees to purchase for themselves, either directly or indirectly, any properties of the trusts. The expression that the powers of management were to be exercised as if the trustees were the owner in fee simple amounts to no more than a direction that the powers actually granted were to be unfettered. Consequently, the executors, who were empowered with only the same general authority granted the trustees, derived no authorization from that general authority to make a sale of the estate's property to themselves, either directly or indirectly. This generality is far different from the express authorization in the will in *Curtis v. Brewer, supra*, on which executors Roy and Don rely, for a sale of the estate's land to any one of the executors or executrix who may desire to purchase. An analogy may be drawn from the situation arising in *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377 (1945), before enactment of the Texas Trust Act. There, the grant to the trustees of broad powers of management similar to those in the case at bar did not justify some of the trustees' profitable self-dealing in the trust's properties, the Supreme Court saying that a trustee is prohibited from placing himself in any position where his self interest will or may conflict with his obligations as trustee, even though he may have acted in good faith and the beneficiary suffered no damage. 187 S.W.2d at 388–89.

Thus, the trial court correctly concluded that the general grant of powers was not specific enough to authorize either a direct or an indirect sale to the executors which is otherwise prohibited by V.T.C.A., Probate Code § 352. The third point is overruled.

The fourth- and fifth-point contention is that the court erred in enjoining the redemption of stock because Shelley has an adequate remedy at law for monetary damages, if any. Thereunder, it is argued that if it be assumed the sale be improper, the only damage which Shelley could sustain would be monetary damage in the event the sale would be for less than the fair market value of the stock.

■ To state the contention, particularly as it is argued, is to refute it. It erroneously presupposes the legal right, absent the injunction issued ancillary to the declaratory judgment, to proceed with a sale which has been declared violative of a statute. It is precisely for this reason that V.A.C.S. art. 4642, § 1, declares that an injunction may be granted "(w)here the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him." In that event, the equitable requirement to show there exists no adequate remedy at law is inapplicable, for the statutory right to the writ is clear without such showing. *Republic Ins. Co. v. O'Donnell Motor Co.*, 289 S.W. 1064, 1066 (Tex.Civ.App.—Dallas 1926, no writ). The fourth and fifth points are overruled.

There is sought, by points six and seven, the invocation of the "clean hands" doctrine to avoid the injunction. The premise is that the evidence establishes that Shelley's actions preceding and culminating in the filing of this suit were to force a purchase of her stock at a premium and in derogation of her duties as an executor to liquidate the estate's debts. The imposition of the doctrine must fail for two reasons.

■ First, the "clean hands" maxim is strictly an equitable doctrine not applicable outside equitable proceedings. *Greever v. Persky*, 156 S.W.2d 566, 569 (Tex.Civ.App.— Fort Worth 1941), *aff'd* 140 Tex. 64, 165 S.W.2d 709 (1942). The injunctive relief was ancillary to a declaration of the invalidity of the impending stock sale in a declaratory judgment action, which is neither legal nor equitable but is sui generis. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945). And, equally important, the

injunction has a statutory foundation, as we have just noted.

Second, although the points of error proceed from the statement that the evidence establishes the fact of unclean hands, the question whether Shelley came into court with clean hands was a disputed issue. The court, judging the credibility of the witnesses and the weight to be given their testimony, found that " . . . in the events that led to the filing of this lawsuit and in filing and prosecuting this lawsuit, Plaintiff [Shelley] has not been guilty of any wrongful conduct." There is challenged, in point twenty-two, the sufficiency of the evidence to support the finding, and embedded in point twenty-three among six other separate and distinct legal reasons why the executors "object and except to the conclusions of law filed herein by the Court" is a statement that under the evidence, Shelley did not come into a court of equity with clean hands.

Obviously, the latter point is multifarious. Recently, in noting that a point of error is multifarious when it embraces more than one specific ground of error or when it attempts to attack several distinct and alleged errors or rulings of the trial court, we held that unless the multifarious point involves only a single legal question, it is not entitled to consideration. *American Biomedical Corporation v. Anderson*, 546 S.W.2d 112, 115 (Tex.Civ.App.—Amarillo 1977, no writ). So, here, the statement concerning the lack of clean hands is not entitled to consideration.

Under point twenty-two, it is argued, for the conclusion that Shelley filed this suit to force a purchase of her stock at a premium in derogation of her duty as an executor to liquidate the estate's debts, that she admitted she would do nothing in settlement of the estate unless a partnership agreement was signed or unless her personal stock in the companies was bought. Contrastively, there was Shelley's testimony that she was following the advice of counsel not to agree to any restructuring which would provide no consideration to her as a beneficiary. The trial court had the responsibility to resolve the conflicts and inconsistencies in the testimony to gauge the efficacy of the evidence. When it is considered that Shelley was objecting to a proposal statutorily violative of an executor's standard of conduct, we cannot say that the court's finding of the disputed fact was against the great weight and preponderance of the evidence.

Thus, we become bound by the court's finding that Shelley has not been guilty of any wrongful conduct, a finding which prevents the invocation of the "clean hands" doctrine. Points six, seven and twenty-two are overruled.

In their eighth and ninth points, executors Roy and Don urge the trial court erred in enjoining the redemption of stock because under the doctrine of balancing the equities there is a much greater probability (even certainty) of damage to the estate if the writ is granted than there would be to Shelley if the injunction were denied. The points of error must be overruled because the equitable doctrine of balancing of the equities—i. e., weighing the relative convenience and inconvenience and the comparative injuries to the parties which would result from the granting or refusal of the injunction sought—does not apply in the case at bar. It has been determined that the executors do not have the right to consummate the proposed redemption, and no one can complain that he is injured by being prevented from doing that which he has no right to do. See 42 Am.Jur.2d, Injunctions, § 60 at 804.

The gist of the tenth and eleventh points is that Shelley waived her right to complain of the proposed stock redemption by failing to object to the proposal at various meetings with Roy and Don at which the debts and assets of their father's estate and the method of payment of the debts were discussed. The evidence is that at one meeting shortly after Roy Furr's death on 13 June 1975, and at two others on 5 and 28 August 1975, the latter attended by Shelley's attorney, it was discussed that sales to and redemption by the corporations of the

stock was the only feasible method of raising funds necessary to pay the debts, and Shelley made no objection. Her first objection to the proposed stock redemption was in the first part of October, 1975. It is this evidence that is said to constitute waiver.

 Assuming, arguendo, that the right of persons interested in an estate to complain of self-dealing prohibited by V.T.C.A., Probate Code § 352, can be waived, it is well established that waiver must be of a known right, *Texas & P. Ry. Co. v. Wood*, 145 Tex. 534, 199 S.W.2d 652, 656 (1947), and that there must be an intentional relinquishment of such known right or intentional conduct inconsistent with claiming it. *Flagg Realtors, Inc. v. Harvel*, 509 S.W.2d 885, 890 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). While it is true that silence may indicate an intention to act in a certain manner, such silence or inaction must be coupled with knowledge of the right and with other circumstances, such as inaction for an unreasonable period of time, which evidence the intention to waive. *Self v. Kinder*, 474 S.W.2d 632, 634 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.).

 Notwithstanding, the trial court found that (a) the evidence does not establish waiver because Shelley's silence and failure to protest does not appear to have lasted until the proposed final plan of redemption was formulated, and that (b) Shelley never, by words or conduct, affirmatively manifested an intention to relinquish any right she had to object to the proposed sales. These findings are subjected to the assertions in the seventeenth and nineteenth points that they are not supported by the evidence and are against the great weight and preponderance of the evidence.

Within the evidence is testimony that during the first two meetings with her brothers, Shelley understood the proposed plan of stock redemption as only a proposal which was vaguely discussed and of which she understood very little, and was embarrassed at not knowing what was going on. She testified in regard to the 28 August 1975 meeting that, although she did not raise any opposition to the proposal at that time because she "believed that what they were doing was investigating the possibilities and moving ahead in their investigation," she did not agree to the proposal. Further, after the first two meetings, Shelley decided that she needed counsel and employed counsel who raised alternate proposals. There is no testimony that Shelley knew, at any time before her October, 1975 objection, of her right under V.T.C.A., Probate Code § 352, to complain of the proposed stock redemption.

It was the province of the trial court to credit the evidence that neither Shelley's words nor her conduct proved that she knowingly and intentionally relinquished her right to complain of the proposed redemption plan. Points ten, eleven, seventeen and nineteen are overruled.

The first segment of the twelfth point is a complaint that the trial court abused its discretion in permitting Shelley to file her amended petition seeking, in addition to the perpetual injunction first pleaded on 13 November 1975, a declaratory judgment. While executors Roy and Don objected to the amended petition offered for filing on 22 March 1976, the day hearing on the application for permanent injunction resumed after a hearing almost three months earlier, they neither contended at the time of trial nor claim on appeal that such amendment operated as a surprise to them or that they requested and were denied a continuance. On the contrary, they contend that "no excuse whatsoever was even offered by plaintiff for the filing of an amended pleading on the date of the trial, and there was no showing whatsoever that plaintiff even attempted to comply with or that there was any reason why plaintiff could not comply with Rule 63, T.R.C.P., requiring the filing of a trial amendment at least seven days prior to trial." Cited are authorities holding that the trial court properly denied a request for leave to file an amended pleading where there was no showing of an attempt to comply with Rule 63, T.R.C.P.

At the outset, we note that notice of application to amend was given Roy and Don and that Shelley requested and received leave of the trial court before filing her first amended petition. The amendment had little potentiality for surprise as it did not substitute new parties, theories of recovery or grounds of defense. Rule 63, T.R.C.P., permits the amendment of pleadings at such times as not to operate as a surprise to the opposite party and within seven days of the date of trial with leave of the court, which leave shall be granted unless there is a showing that such amendment will operate as a surprise to the opposite party. There being compliance with the rule and no claim, much less showing, of surprise, there was no abuse of the court's discretion in granting leave to amend, and we are not authorized to set the order aside. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605, 609 (1948).

The other facet of the twelfth point is that declaratory relief is not appropriate in the case at bar because in another cause pending at the time of the filing of the declaratory proceedings, Shelley and her husband were opposing the merger of Farm Pac Kitchens, Inc., and Furr's Realty Company, and were seeking a determination of the fair market value of the stock therein. Thereunder, it is alleged that the pending suit and the case at bar involve many of the same issues.

As a general rule, an action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another cause between the same parties and in which the same issues may be adjudicated. *Texas Liquor Control Board v. Canyon Creek Land Corporation*, 456 S.W.2d 891, 895 (Tex.1970). The rule has not been shown to be applicable here, for, though we may speculate, the record we review does not show to us, or that the trial court was informed, that the same parties are involved in the two proceedings and that the adjudication of the grounds of Shelley's opposition to the merger will adjudicate the ultimate issues in the case at bar. The twelfth point is overruled.

Points thirteen, fifteen, sixteen, eighteen, and twenty through twenty-three were drafted to challenge other findings of fact not previously designated as such. Although practically all of these points verge on or contain the vice of multifariousness present in point twenty-three, they have been considered. We agree with the executors' appraisal that the findings challenged are immaterial to the resolution of the issues dispositive of this appeal. Neither the sustaining nor the overruling of any or all of the points would affect the judgment rendered. For this reason and in the interest of brevity, any further discussion of the points is pretermitted.

Presented by points twenty-four through twenty-seven are the complaints about the court's refusal to make additional findings of fact requested by the executors. The requested findings are either on immaterial matters that would not affect the judgment or are in conflict with the original factual findings we have upheld. Pertinent here is the rule that where additional requested findings of fact do not relate to the ultimate or controlling issues or would conflict with the original findings, they need not be made. *Friedman v. Cohen*, 429 S.W.2d 510, 512 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The points are overruled.

Whether particularly mentioned or not, all details presented in this appeal have been reviewed and considered in our disposition. After consideration, we find no reversible error attending the rendition of the trial court's judgment.

The judgment is affirmed.

ROBINSON, J., not sitting.