Roberta KERN, Administratrix of the Estate of Howard R. Kern, a/k/a Howard Rayburn Kern, a/k/a Rayburn Kern, Deceased

v.

Roxanne KERN; Gerald R. Kern; Terry L. Kern; Robert K. Kern; Richard M. Kern; Revocable Kern Family Trust; and Kern Brothers Lumber Company, Inc., Appellees

Appeal of: Maria BEDNAROWICZ and Gayle Picconi, Co–Administratrices D.B.N. of the Estate of Howard R. Kern a/k/a Howard Rayburn Kern, a/k/a Rayburn Kern, Deceased, Appellants

Superior Court of Pennsylvania.

Argued Sept. 20, 2005.
Filed Dec. 19, 2005.
Reargument Denied March 6, 2006.

James S. Lederach, Scottdale, for Kern, Robert, for appellant.

Meliossa A. Guiddy, Greensburg, for Kern, Roxanne, appellee.

Before: ORIE MELVIN, McCAFFERY and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 Appellants Marla Bednarowicz and Gayle Picconi, co-administratrices D.B.N. of the estate of Howard R. Kern, a/k/a Howard Rayburn Kern, a/k/a Rayburn Kern, deceased, appeal from the order entered on December 6, 2004, in the Court of Common Pleas of Fayette County, Pennsylvania, which order made final the entry of partial summary judgment on behalf of Roxanne Kern, Gerald R. Kern, Terry L. Kern, Revocable Kern Family Trust, and Kern Brothers Lumber Company, Inc. (collectively Appellees). Additionally, Appellees have filed a motion to quash citing deficiencies in Appellants' brief and Pa. R.A.P.1925(b) statement. Upon review, we deny Appellees' motion and affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: John Kern (John) and Howard Rayburn Kern (Rayburn) were brothers and business partners in Kern Brothers Lumber Company (the business). The business was organized as a partnership in 1973. During the course of their business relationship, Rayburn became mentally and physically disabled due to the effects of alcoholism, and he ceased working at the business. As a result of his condition, Rayburn separated from Roberta Kern

(Roberta), his wife, and, in 1986, was placed in a personal care home.

¶ 3 Pursuant to the partnership agreement, John presented an accounting to Rayburn, and Rayburn's interest in the partnership was returned to him through wage and benefit payments to himself and Roberta. Throughout the period of Rayburn's disability, John ran the business and purchased certain property that was logged by the business and was leased to other businesses for mining purposes. In 1996, John took steps to form a corporation as a successor to the partnership he had with Rayburn. Although Rayburn was disabled, separated from his wife, and did not have a legal guardian, John arranged the preparation of a dissolution agreement by which Rayburn relinquished his rights in the partnership. Thereafter, on January 1, 1997, John executed a sale of the partnership's assets to the newly-incorporated Kern Brothers Corporation. John died on November 21, 1997.

¶ 4 Despite the change of the business' organizational structure and despite John's death, the business continued to make wage and benefit payments to Rayburn until his death in December 2000. After Rayburn's death, the business continued to disburse funds to Roberta and pay her health insurance premiums. The business ceased making payments to Roberta on her sixty-fifth birthday in July 2001.

¶ 5 On July 18, 2001, after the business ceased making payments to Roberta, she filed a complaint in equity on behalf of Rayburn's estate against Appellees. In essence, the complaint asserted that John exercised undue influence over Rayburn during his disability. This undue influence caused Rayburn to transfer his interest in the partnership to John (for sale to the corporation controlled by John) with-out receiving adequate compensation for his share of the partnership. Rayburn's estate requested the relief of an accounting of assets of the business and imposition of a constructive trust for various properties owned jointly by Appellees, as well as profits, rents, and royalties owed allegedly to Rayburn's estate by John's estate. Appellees responded to this complaint on August 13, 2001, by filing preliminary objections. Thereafter, on August 30, 2001, Roberta filed an amended complaint. Appellees, in turn, filed an answer, new matter, and counterclaim. Appellees' answer and new matter asserted that Roberta's claims were barred by laches or the statute of limitations.

¶ 6 At the conclusion of pleadings, Appellees filed a motion for sanctions, asserting that the allegations made by Roberta in the complaint lacked evidentiary support. In an effort to preclude the imposition of sanctions, Roberta took the deposition of Judge John F. Wagner, Jr., Rayburn's former attorney. Thereafter, on April 24, 2003, Appellees filed a motion for summary judgment that requested judgment as a matter of law because count I of Rayburn's estate's suit was an impermissible collateral attack on the distribution of John Kern's estate and because counts II and III were barred by the doctrine of laches.

¶ 7 The trial court granted Appellees' motion for summary judgment on November 26, 2003. The trial court authored an opinion in support of its order granting summary judgment. Rayburn's estate, through Appellants, co-administratrices of the estate,[1] attempted to appeal the trial court's November 26, 2003 order to this Court. We quashed this appeal as interlocutory because the trial court had not yet adjudicated Appellees' counterclaim. *See*

---

1. Appellants replaced Roberta as co-adminis- tratrices of Rayburn's estate.

*Kern v. Kern,* 2223 WDA 2003 (Pa.Super. filed 2/25/2004). Appellees filed a motion to discontinue their counterclaim on December 2, 2004. The trial court granted this motion on December 6, 2004. Thereafter, Appellants filed a timely notice of appeal to this Court on January 3, 2005. The trial court ordered Appellants to file a concise statement of matters complained of on appeal, and they complied. The trial court did not author a new opinion but, instead, adopted its previous opinion as its response to Appellants' concise statement.

¶ 8 Appellant presents the following issues for our review:

A. Where [Roberta's complaint] sought to recover property wrongfully procured and retained by [John] by way of undue influence and concealment, whether the [trial court] committed an error of law by dismissing [Roberta's] complaint on the basis of the collateral estoppel of a decree of distribution entered in the estate of [John], when [Roberta's complaint's] remedy of constructive trust did not seek to attack the decree of distribution but to enforce an equitable lien against the property distributed by that decree?

B. Where [Roberta] sought an accounting from [John Kern] who had continued to operate the partnership business after dissolution without accounting to [Rayburn] for his interest in the partnership but who had made continuous distributions of profits and benefits to [Rayburn and Roberta] in connection with his interest, whether the [trial court] committed an error of law or abused its discretion by granting summary judgment dismissing [Roberta's] action for account[ing] on the basis of laches or the statute of limitations where it should have reasonably been inferred from the record that laches or the stat-

ute of limitations was tolled by [John's] partial payments on account of [Rayburn's] interest and by [John's] later attempt to state an account to [Rayburn]?

C. Where [Roberta's] complaint sought to recover property wrongfully procured and retained by [John Kern] by way of undue influence and concealment while [Rayburn] was under a disability, whether the [trial] court committed an error of law or abused its discretion by granting summary judgment dismissing that complaint on the basis of laches, where it should reasonably [have inferred] from the record that the application of laches was tolled by the alleged wrongful misconduct and [Rayburn's] own disability?

Appellants' brief, at 2.[2]

¶ 9 First, we will review Appellees' motion to quash. Appellees assert the following: (1) that Appellants failed to file their designation of the record properly by filing the designation as an attachment to their brief; (2) that Appellants failed to include a statement of both the scope and standard of review in their brief; and (3) they failed to append a copy of their statement of matters complained of on appeal to their brief. Further, Appellees contend that Appellants' second issue is waived as a result of Appellants' failure to present that specific issue in their concise statement of matters.

■ ¶ 10 Review of Appellants' brief and the record of this case indicates that they did, in fact, fail to file their designation of the record properly in violation of Pa.R.A.P. 2154(a). Likewise, review of Appellants' brief indicates that the brief fails to comply with Pa.R.A.P. 2111(a)(3) (statement of scope and standard of review must be included in appellate brief) and

---

**2.** We have reorganized Appellants' issues.

(a)(10) (copy of Pa.R.A.P.1925(b) statement or averment that no Pa.R.A.P.1925(b) statement was ordered must be included in appellate brief). However, as a practical matter, this Court quashes appeals for failure to conform to the Rules of Appellate Procedure only where the failure to conform to the Rules results in the inability of this Court to discern the issues argued on appeal. *See, e.g., Commonwealth v. Adams,* 882 A.2d 496, 498–99. Appellants' failure to conform to the Rules of Appellate procedure regarding his brief cannot be condoned, but Appellants' failure has not hampered our review.

¶ 11 Moreover, it is correct that Appellants' concise statement does not contain the *precise* issue presented to this Court in issue "B" of Appellants' brief. The application of Pa.R.A.P.1925(b), and its concomitant waiver rule, has been the source of much consternation in the Courts of this Commonwealth. A Pa.R.A.P. 1925(b) statement need not raise, in minute detail, the arguments in support of the issues that an appellant wishes to raise on appeal because such an action may, in fact, frustrate a trial court's analysis of the issues, and, in turn, an appellate court's analysis of the issues in its disposition. *See, e.g., Kanter v. Epstein,* 866 A.2d 394, 401 (Pa.Super.2004). However, the Pa. R.A.P.1925(b) statement must be sufficiently specific so as to afford the trial court the ability to draft a meaningful opinion without resorting to speculation regarding what issues or arguments an appellant wishes to present. *Commonwealth v. Dowling,* 778 A.2d 683 (Pa.Super.2001) (*Lord* waiver doctrine bars review of issues presented in Pa.R.A.P. 1925(b) statement where Pa.R.A.P.1925(b) statement is too vague to permit meaningful appellate review).

¶ 12 Upon review of Appellants' Pa. R.A.P.1925(b) statement, the trial court concluded that its previous opinion addressed satisfactorily the issues presented by Appellants in their Pa.R.A.P.1925(b) statement. Comparison of the Pa.R.A.P. 1925(b) statement and the trial court's opinion indicates that the trial court discussed the matters that Appellants wish to present for our review. The trial court's opinion is complete and well-reasoned. Therefore, our review of this appeal is not hampered, and we will not find Appellants' second issue waived. Accordingly, we will proceed to an analysis of Appellants' issues.

¶ 13 Appellants assert first that the trial court erred in its conclusion in summary judgment that Roberta's complaint was a collateral attack on the distribution of John Kern's estate, in violation of 20 Pa.C.S.A. § 3358 and § 3521. Appellants' issue attacks the trial court's grant of summary judgment. Our review of this issue is governed by the following standard:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to

judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).

¶ 14 Section 3358 of the Decedents', Estates', and Fiduciaries' Code states the following:

No decree entered pursuant to this code shall be subject to collateral attack on account of any irregularity if the court which entered it had jurisdiction to do so.

¶ 15 Section 3521 of the Decedents', Estates', and Fiduciaries' Code, 20 Pa.C.S.A., states the following:

If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which

was distributed by him in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.

¶ 16 In the complaint, Roberta asserted that Rayburn's estate was entitled to the imposition of a constructive trust upon the heirs of John Kern's estate, because the heirs received property obtained by John from Rayburn through the exercise of undue influence. The trial court concluded that the suit was, in fact, a collateral attack against the final distribution of John Kern's estate and, therefore, was barred by the aforementioned provisions of the Decedents', Estates', and Fiduciaries Code. On appeal, Appellants assert that the trial court erred in its conclusion because "John Kern's property was properly distributed by the [distribution decree], but subject to the equitable lien of John Kern's misconduct in the form of undue influence and fraudulent concealment before his death."

¶ 17 As support for their argument, Appellants cite the holding of the Supreme Court of California in *Caldwell v. Taylor*, 218 Cal. 471, 23 P.2d 758 (1933), as persuasive authority. In *Caldwell*, the Court held that, in cases of *extrinsic fraud* perpetrated by a beneficiary of a will in the probate of that will, a court may, despite the finality of the distribution decree, declare the beneficiary of the will a trustee for those who have been defrauded in the prosecution of their challenge to the probate of the will by the beneficiary's fraudulent conduct. *See Caldwell*, at 475, 23 P.2d at 759–60.

¶ 18 Even if we were to adopt the reasoning of the Supreme Court of

California, which we do not, *Caldwell* offers no support for Appellants' position. In the first instance, *Caldwell* involved a case of extrinsic fraud, not undue influence. "Extrinsic fraud" is defined as "some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *See McEvoy v. Quaker City Cab Co.*, 267 Pa. 527, 536, 110 A. 366, 368 (1920). In Pennsylvania, fraud of any kind must be pleaded in a complaint with particularity. *See* Pa.R.Civ.P. 1019(b). On the other hand, "undue influence" is defined as conduct including "imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, [manifested in] such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will." *See In re Angle*, 777 A.2d 114, 123 (Pa.Super.2001).

¶ 19 Reference to Roberta's complaint indicates that she does not allege fraud on the part of John Kern specifically. Likewise, the complaint's allegations of "undue influence" do not contain a particularized allegation of fraud on the part of John Kern or by John Kern's estate in preventing Rayburn's heirs from challenging probate of John's will. Fraud *may* be part of a scheme to influence a testator improperly, but it is not the only means by which a defendant may exercise "undue influence." *See Angle*, 777 A.2d at 123.[3] Absent a particularized allegation of fraud, we decline the invitation to ferret fraud out from a myriad of possible causes of the present controversy. Therefore, *Caldwell* is inapplicable to the present case. As such, Appellants' argument fails.

¶ 20 Moreover, given the form of relief requested in Roberta's complaint, *i.e.*, imposition of a constructive trust, we are satisfied that the trial court concluded correctly that Sections 3358 and 3521 of the Decedents', Estates', and Fiduciaries' Code, 20 Pa.C.S.A, preclude such relief. Appellants' arguments regarding a "constructive trust" and an "equitable lien" confuse the two terms. A "constructive trust" is defined as "a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property[.]" *See Philadelphia v. Heinel Motors, Inc.*, 142 Pa.Super. 493, 16 A.2d 761, 765–66 (1940). An equitable lien arises from an obligation, usually monetary in nature, owing by one person to another, a *res* to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation. *See Hoza v. Hoza*, 302 Pa.Super. 72, 448 A.2d 100, 104 (1982).

¶ 21 Thus, the imposition of a constructive trust is appropriate only where the defendant has *no right whatsoever* to the property he holds in violation of the plaintiff's rights. *Heinel Motors, Inc.*, 16 A.2d at 765–66. However, an equitable lien is appropriate where the defendant's property interest is subject to an obligation owed to the plaintiff. *Hoza*, 448 A.2d at 104. Thus, the effect of the imposition of a constructive trust on property distributed to John Kern's heirs would not be merely to make that property (and, therefore, the distribution decree) subject to a lien in favor of Appellants. Rather,

---

**3.** Parenthetically, we note that the use of the term "fraud" in the definition of "undue influence" refers to a dishonest act that must be proven at trial and is, therefore, *intrinsic*. *See, e.g., McEvoy*, at 536, 110 A. 366, 110 A.2d at 368.

the imposition of a constructive trust would require the property in question to be re-conveyed to Appellants *in its entirety*. As such, the effect of the imposition of a constructive trust on the property in question would be to overrule the trial court's previous distribution decree, which action is forbidden by 20 Pa.C.S.A. § 3358.

¶ 22 If Appellants had a legitimate challenge to the probate of John Kern's estate, they were obligated to follow the procedure set forth in 20 Pa.C.S.A. § 3521. Roberta's complaint does not allege that she was unaware of John's death or that estate proceedings were commenced (and concluded) on his behalf in accordance with the notification requirements of the Decedents', Estates', and Fiduciaries' Code. Therefore, her failure, and the failure of Appellants, to challenge the distribution of John Kern's estate utilizing the procedure set forth in 20 Pa.C.S.A. § 3521 cannot now be rectified by the imposition of a constructive trust.[4] Accordingly, we are satisfied that the trial court did not err when it entered summary judgment in favor of Appellees on count I of Roberta's complaint. Therefore, Appellants' argument fails.

 ¶ 23 Next, Appellants allege that the trial court erred when it concluded that counts II and III of Roberta's complaint were barred by the doctrine of laches. The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that "those who sleep on their rights must awaken to the consequence that they have disappeared." *See Jackson v. Thomson*, 203 Pa. 622, 624, 53 A. 506, 506 (1902). In order to apply the doctrine to bar prosecution of a stale claim, the following elements must be demonstrated: (1) a delay

arising from Appellants' failure to exercise due diligence; and (2) prejudice to the Appellees resulting from the delay. *See Stilp v. Hafer*, 553 Pa. 128, 134, 718 A.2d 290, 293 (1998). Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time. *See United Nat'l Ins. Co. v. J.H. France Refractories Co.*, 542 Pa. 432, 440, 668 A.2d 120, 124–25 (1995). Indeed, the *doctrine of laches* may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. *Id.*, at 440, 668 A.2d at 124–25.

 ¶ 24 First, we must consider whether a delay occurred in this case. In the complaint, Roberta asserted that Rayburn was disabled due to the effects of alcoholism beginning in 1986 and continuing until his death in 2000. From 1986 forward, Roberta asserted that John unduly influenced Rayburn, his partner in the business, and that John controlled the business as if it were his own by collecting royalties paid for mining rights and rents paid on property owned by the business without remitting a portion of or accounting these sums to Rayburn. The royalties were allegedly paid to John by Amerikohl Mining Company between June 1990 and January 1991. Accordingly, the earliest date a cause of action could have accrued against John was January 1991. Therefore, a delay of approximately 10 years existed between the time the cause of action arose, and the time Roberta filed suit. Therefore, we are satisfied that Appellees have demonstrated a delay.

 ¶ 25 The question of whether a party exercised "due diligence" in pursuit of a claim is not what a party knows, but

---

4. We note, that despite Appellants' assertions, their complaint does not request the relief of an equitable lien.

what the party may have known by the use of information within their reach. *See Stilp*, at 135, 718 A.2d at 294. Roberta's deposition indicates that she was under the belief that Rayburn lacked the mental capacity to enter into contracts since he was institutionalized in 1986 and that she was aware that John "took over the business" after Rayburn's disability, despite Rayburn's status as a partner. Despite her knowledge of these facts, Roberta admitted that she did not procure a legal guardian for Rayburn prior to or during the dissolution of the partnership. Likewise, she did not seek to institute a lawsuit on Rayburn's behalf after the partnership dissolved because she was satisfied to receive payments from the business. There is no allegation in Roberta's complaint that these payments were made by the partnership (and John) with the intent of luring Rayburn (and Roberta) away from redress in the courts. Clearly, had John engaged in self-dealing within the partnership, Roberta had the means to uncover his acts by obtaining a guardian or by seeking an accounting of the partnership's assets at the time the alleged self-dealing took place. Roberta's failure to take these actions indicates that the delay in this lawsuit arose from her lack of due diligence. *Id.*, at 135, 718 A.2d at 294.

¶ 26 Next, we consider whether the delay caused prejudice to accrue to Appellees. *See Stilp*, at 134, 718 A.2d at 293. Of particular relevance for our consideration of this element is the fact that the two material witnesses to this case, John and Rayburn, are deceased. It is well-settled law that the doctrine of laches is applicable peculiarly where the difficulty of doing justice arises through the death of the principal participants in the transactions complained of, or of the witnesses or witnesses to the transactions, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. *See In re Wallace's Estate*, 299 Pa. 333, 340, 149 A. 473, 475 (1930).

¶ 27 The record indicates that there are no living witnesses to John's alleged acts of subversion and control. By her own admission, Roberta knew nothing of John's behavior other than her allegations of his "control" of the partnership. Judge Wagner, Rayburn's former attorney, stated that he saw no evidence of John's alleged subversion of Rayburn's free agency. Indeed, Judge Wagner testified that, based on his observation of the two men, John acted in the opposite manner by offering monetary support to Rayburn. Therefore, it is clear that the absence of living witnesses to the alleged events has left Appellees at a distinct disadvantage in defending this law suit and, therefore, they are prejudiced by the delay in this case. *See Stilp*, at 134, 718 A.2d at 293; *see also Wallace's Estate*, at 340, 149 A. at 475. Therefore, we are satisfied that the trial court did not err when it determined that counts II and III of Roberta's complaint were barred by the doctrine of laches. Consequently, we affirm the order of the trial court.[5]

---

**5.** Parenthetically, we note that the arguments Appellants present regarding the statute of limitations for accounting actions against former business partners are inapposite to the present case. Unlike the limitations cases, we are called upon here to determine whether the delay in bringing this lawsuit occasioned prejudice to Appellees in their defense of the lawsuit. We conclude that such prejudice did accrue to Appellees, and, therefore, the law-

suit is barred by the doctrine of laches. As stated above, laches may bar a suit at equity where a comparable suit at law would be timely under the proper statute of limitations, and, therefore, the fact that a comparable suit at law may be timely is of no consequence to our disposition. *See United Nat'l Ins. Co.*, at 440, 668 A.2d at 124–25. Moreover, the mere fact that the business made "partial payments" to both Rayburn and Roberta

¶ 28 Motion to quash denied. Order affirmed.

throughout the course of John's control is immaterial because, as stated above, the key consideration for the application of the doctrine of laches in this case is the fact that all material witnesses to the transaction in question are deceased. Therefore, we are satisfied that the doctrine of laches was applied properly by the trial court.