2014 PA Super 270

| | | |
|---|---|---|
| TILLIE F. FULTON, ADMINISTRATRIX d.b.n.c.t.a. OF THE ESTATE OF FERN O. FULTON, DECEASED, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| DONALD J. FULTON AND LORA F. FULTON, HIS WIFE; RONALD A. FULTON AND SYLVIA E. FULTON, HIS WIFE; AND ERNEST E. FULTON AND MYRNA C. FULTON, HIS WIFE, | : : : : : : | |
| Appellees | : | No. 282 WDA 2014 |

Appeal from the Order Entered January 22, 2014,
In the Court of Common Pleas of Fayette County,
Civil Division, at G.D. No. 545 of 2011.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and ALLEN, JJ.

OPINION BY SHOGAN, J.: **FILED DECEMBER 05, 2014**

Appellant, Tillie F. Fulton, as Administratrix *de bonis non cum testamento annexo*[1] ("Administratrix") of the estate of her mother-in-law, Fern O. Fulton ("Decedent"), appeals from the January 22, 2014 order of the Fayette County Court of Common Pleas dismissing this case on the basis of laches. We affirm.

---

[1] If an executor dies while performing duties, a court will appoint an administrator *d.b.n.c.t.a.* to complete distribution of a decedent's estate. 20 Pa.C.S. § 3159.

In an opinion denying Administratrix's motion for summary judgment,

the trial court explained the basis of this suit, as follows:

> The Plaintiff is the Administratrix of the Estate of Fern O. Fulton (the "Decedent"). [Decedent passed away on June 26, 2008.] The Defendants [are sons] Donald J. Fulton and [his wife,] Lora F. Fulton, Ronald A. Fulton and [his wife,] Sylvia E. Fulton, and Ernest E. Fulton and [his wife,] Myrna C. Fulton . . . . [T]he Decedent's son and agent, Donald J. Fulton, . . . conveyed several properties owned by the Decedent . . . .
>
> The facts of this case are not in dispute. The Decedent had six children,[2] including Marvin Fulton, who died on July 18, 2008, and [Appellees Donald J.] Fulton, Ronald A. Fulton, and Ernest E. Fulton. The Decedent's husband, Solomon L. Fulton, passed away on July 13, 1999. The Plaintiff is the Decedent's daughter-in-law and Marvin Fulton's widow.
>
> On July 21, 1999, the Decedent executed a [power of attorney] POA naming [Donald] as her attorney-in-fact. The POA gave [him], *inter alia*, authority to exercise control over the Decedent's affairs regarding asset management, estate planning, medical procedures, admission into medical facilities and other health care decisions.
>
> * * *
>
> Using the POA, [Donald] began dividing up the family farm,[3] which was located in Springfield Township, Fayette

---

[2] Decedent's children are Earnest, Marvin, who is deceased, Brent, Karen, and twins, Donald and Ronald. Deposition of Donald Fulton, 5/25/12, at 11.

[3] During his May 25, 2012 deposition, Donald testified that in 1981 his mother and father held a family meeting and told their children that they "wanted the property divided up among the kids . . . . equally divided among us brothers and sisters." N.T., 5/25/12, at 12–13. Donald testified that there was another meeting in 1992, where Decedent and her husband, Solomon, gathered all of their children, minus spouses, and reiterated "how the farm was to be subdivided." *Id*. at 18. Answers to interrogatories of all Appellees were consistent. Appellee Ronald Fulton stated in his answers to

County, Pennsylvania. [Donald] made the first conveyance on March 20, 2000. He conveyed 9.05 acres to himself and his wife, Lora F. Fulton.[4] [Donald] then conveyed 39.01 acres to himself and Lora two years later on March 25, 2002. That same day, [Donald] conveyed 32.21 acres to Ronald A. Fulton and [Ronald's] wife, Sylvia E. Fulton[,] and 29.61 acres to Ernest E. Fulton and his wife, Myrna C. Fulton. The conveyed parcels were owned by Decedent[,] and one dollar ($1.00) was paid in consideration for each of the properties.

Trial Court Opinion (Summary Judgment), 11/26/12, at 2–3.

---

interrogatories that "it was agreed between the siblings which portion of the farm each was to receive." Defendants, Ronald A. Fulton and Sylvia E. Fulton's, Answers to Interrogatories and Response to Request for Production of Documents, 2/3/12, at ¶ 9; Defendants, Donald J. Fulton and Lora F. Fulton's, Answers to Interrogatories and Response to Request for Production of Documents, 2/3/12, at ¶ 7. In Ernest's answers to interrogatories, he described the 1992 meeting of all siblings with their parents as follows:

On a Sunday in 1992, Solomon L. Fulton and Fern O. Fulton held a meeting in their kitchen with their children and without in-laws being present. Using maps spread out on the table, they explained to their children how they wanted the property divided and which parcels were to go to each child.

Defendant Ernest E. Fulton's Affidavit in Opposition to Plaintiff's Motion for Summary Judgment, attached to Defendant's Response to Plaintiff's Motion for Summary Judgment; 7/27/12; at Exhibit A, ¶ 6.

[4] In answers to interrogatories, Donald stated that his parents previously conveyed a twenty-eight-acre tract to their son, Brent, and his wife, Regina, in April 1984, and a 23.84-acre tract to their son, Marvin, and his wife, [Administratrix], in October 1992. Donald also stated that his sister, Karen, was to "receive the 9.05-acre tract of land upon which the house was located," which Donald ultimately conveyed to himself at his parents' direction because Karen "was undergoing difficulties with the Internal Revenue Service . . . ." Defendants, Donald J. Fulton and Lora F. Fulton's, Answers to Interrogatories and Response to Request for Production of Documents, 2/3/12, at ¶ 8.

On April 29, 2003, Decedent commenced an action at law against Donald, only,[5] in the Court of Common Pleas of Fayette County, in which she sought money damages in connection with the conveyances he made. *Fulton v. Fulton*, 952 of 2003, G.D. Decedent died five years later, on June 26, 2008, leaving a will that named Marvin as executor of her estate. Trial Court Opinion (Summary Judgment), 11/27/12, at 3. Marvin died one year later, on June 23, 2009. Administratrix's Brief at 6. Decedent's action at law was not litigated to conclusion before her death or Marvin's death, and the common pleas court ultimately dismissed that suit for lack of activity. *Id*.; Trial Court Opinion, 1/22/14, at 4. On February 9, 2011, Administratrix was appointed Administratrix *d.b.n.c.t.a*. of Decedent's estate. Order, 2/9/11: R.R. at 116a; Administratrix's Brief at 6.

Administratrix brought this action in equity against Donald and his wife, Lora, Ronald, and his wife, Sylvia, and Ernest, and his wife, Myrna, (collectively "Appellees") on March 9, 2011, seeking both that the conveyances be set aside and the imposition of a constructive trust upon the conveyed properties. Appellees filed an Answer, New Matter, and Counterclaim on June 1, 2011, and therein pled the affirmative defense that Administratrix's claims were barred by the doctrine of laches. On June 29,

---

[5] The trial court noted that Decedent successfully joined the additional appellees herein as additional defendants in the 2003 action at law, but the court later dismissed them "pursuant to the granting of preliminary objections." Trial Court Opinion, 1/22/14, at 3.

2012, Administratrix filed a motion for summary judgment, which the trial court denied on November 27, 2012, after receiving briefs and holding oral argument. Thereafter, the parties filed pretrial statements in January and February 2013, and the trial court held a pretrial conference on March 18, 2013. On that date, the trial court entered an order directing the filing of briefs on the issue of laches and scheduled a hearing for May 22, 2013. The trial court entered an order on January 22, 2014, stating, in pertinent part, as follows: "[T]he doctrine of laches applies to bar the claims in [Administratrix's] Complaint. It is further ordered and decreed that the Complaint is dismissed with prejudice." Order, 1/22/14. Administratrix filed a timely notice of appeal, and both the trial court and Administratrix complied with Pa.R.A.P. 1925.

Administratrix raises the following two issues on appeal:

I. Is a third party's lack of due diligence in prosecuting an action at law imputable to a complaining party so as to bar that party's separate equitable action under the doctrine of laches?

II. Does the doctrine of laches bar a claim when no evidence is presented demonstrating prejudice from a lapse in time?

Administratrix's Brief at 4 (full capitalization omitted). We will address both issues together.

The doctrine of laches is an equitable bar to the prosecution of stale claims and is "the practical application of the maxim that 'those who sleep on their rights must awaken to the consequence that they have

-5-

disappeared.'" ***Kern v. Kern*** 892 A.2d 1, 9 (Pa. Super. 2005) (quoting

***Jackson v. Thomson***, 53 A. 506, 506 (Pa. 1902)). The question of

whether laches applies is a question of law; thus, we are not bound by the

trial court's decision on the issue. ***United Nat. Ins. Co. v. J.H. France***

***Refractories Co.***, 668 A.2d 120, 124 n.4 (Pa. 1995) (citing ***2401***

***Pennsylvania Ave. Corp. v. Federation of Jewish Agencies***, 489 A.2d

733, 736 (Pa. 1985)). The question of laches itself, however, is factual, ***In***

***re Estate of Scharlach***, 809 A.2d 376 (Pa. Super. 2002), and is

determined by examining the circumstances of each case. ***Sprague v.***

***Casey***, 550 A.2d 184 (Pa. 1988). ***See also Patten v. Vose***, 590 A.2d

1307, 1309 (Pa. Super. 1991) ("The existence of laches is a factual issue to

be decided according to the circumstances in each particular case.");

***Holiday Lounge, Inc. v. Shaler Enterprises Corp.***, 272 A.2d 175, 177

(Pa. 1971); ***Dorsch v. Jenkins***, 365 A.2d 861, 864 (Pa. Super. 1976).

> We have outlined the parameters of the doctrine of laches as follows:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.

***Estate of Scharlach***, 809 A.2d at 382–383 (quoting ***Sprague***, 550 A.2d at

187–188). Unlike the application of the statute of limitations, exercise of the

doctrine of laches does not depend on a mechanical passage of time. *Kern*, 892 A.2d at 9; *United Nat.*, 668 A.2d at 124–125. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. *United Nat.*, 668 A.2d at 124–25. Moreover,

> [t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

*Commonwealth ex rel. Baldwin v. Richard*, 751 A.2d 647, 651 (Pa. 2000) (internal citations omitted).

In analyzing whether a delay occurred in this case, the trial court stated as follows:

> On July 21, 1999, . . . Decedent executed a power of attorney appointing Donald J. Fulton as her attorney-in-fact. *See*, Complaint ¶ 4. Between March 2000 and March 2002, Donald J. Fulton conveyed land belonging to the Decedent in Springfield Township, Fayette County to the Defendants at the within action for nominal or no consideration. *Id*. at ¶7–9.
>
> On August 14, 2012,[6] the Decedent, through counsel, sent a letter to Defendants disputing the legality of such

---

6 The trial court's reference to this date is an obvious error, as it does not "fit" chronologically, and the August 14, 2012 letter is described as being dated prior to April 29, **2003**, in the subsequent sentence by the trial court. We cannot verify the correct date of that letter, however, because the complaint at 952 of 2003, G.D. is not in the record certified to us on appeal. The 2003 complaint is discussed in the notes of testimony from the May 22, 2013 oral argument on the applicability of laches, in the trial court opinion,

transfers and requested that the properties be returned to her. Thereafter, on April 29, 2003, the Decedent, through counsel, filed a Complaint alleging that Donald J. Fulton "acting with the Authority of the Durable Power of Attorney" conveyed assets of the Decedent to himself and to others as more particularly set forth therein to the "detriment" of the Decedent. *See*, Complaint at 952 of 2003, G.D. In 2003, the Decedent requested a monetary judgment, but did not seek the return of property. Subsequently, the Decedent sought to join additional defendants, namely the Defendants herein, which the Court permitted, but such defendants were dismissed pursuant to the granting of preliminary objections. In September 2006, the Decedent filed a Petition to Enforce Agreement wherein she alleged correspondence from Defendant, Donald J. Fulton, in settlement negotiations required the transfer of the real property back to the Decedent. Such Petition was denied by reason of Decedent failing to appear and being unable to proceed. Decedent took no further affirmative actions to pursue the allegations of her Complaint.

On June 26, 2008, the Decedent died, leaving a will appointing Marvin W. Fulton as Executor. Marvin W. Fulton subsequently died on June 23, 2009, and by way of Court Order, Plaintiff was appointed as Administratrix of the Decedent's Estate on February 9, 2011.

By way of a delay, approximately eleven years passed between the time of the conveyances at issue and the time that Plaintiff, Tillie F. Fulton, Administratrix d.b.n.c.t.a. of the Estate or Fern O. Fulton, deceased, instituted the within action. The Court is cognizant that the current Plaintiff lacked standing to challenge the conveyances until she became the Decedent's personal representative. Nonetheless, the Court believes an examination of the Decedent's actions are necessary to determine whether a delay occurred.

---

and elsewhere. The complaint at 952 of 2003, G.D. apparently was attached to Appellant's trial brief on the subject of laches, *see* N.T., 5/22/13, at 4, but only the fact of the brief's filing on May 16, 2013, is noted in the docket; the brief itself is not included in the record. In our view, the absence of the complaint at 952 of 2003, G.D., is detrimental to Administratrix's case.

A review of the Record in the instant case and at Case No. 952 of 2003 reveals that the Decedent filed suit against Donald J. Fulton and therein alleged his conveyances of land belonging to her occurred to her detriment. The Court notes that the Decedent requested monetary relief and did not request to set aside the conveyances. The Court further notes that on the Record at Case No. 952 of 2003[,] the Decedent failed to diligently pursue her legal rights, finding an inactive docket for many years, finding that the Decedent failed to appear for a scheduled court hearing, and finding that the case was dismissed for inactivity. The reason for the Decedent failing to diligently pursue her actions at Case No. 952 of 2003 is not known, nor will this Court speculate as to such.

Although Case No. 952 of 2003 is not identical to the instant action, the basis for the causes of action are similar enough for this Court to determine that a delay of eleven years has occurred, and such a delay was the result of the lack of due diligence of the Decedent and her first Executor of the Estate, Marvin W. Fulton.

Trial Court Opinion, 1/22/14, at 2−4.

Administratrix argues that in applying the doctrine of laches, the trial court based its determination that Administratrix lacked due diligence on its assessment of the Decedent's conduct in failing to prosecute her separate action at law to resolution before her death. Administratrix maintains that this assessment thus permitted the trial court to impute the acts of a third party—Decedent—to Administratrix in order to find undue delay, rather than independently evaluating Administratrix's promptness in bringing the instant action after her appointment. Administratrix suggests that this determination overlooks the fact that until she was appointed as personal representative of Decedent, Administratrix had no standing to challenge the

conveyances. Therefore, she contends that the conclusion that laches could run against her, before she had the legal ability to assert her rights, is flawed.

The delay in this case extended over a nine-year period. The conveyances occurred in March of 2000 and March of 2002. The present suit was instituted in 2011. While Administratrix had no standing to proceed before that time, Decedent certainly did, as did Adminstratrix's husband, Marvin, the executor of Decedent's estate. Decedent, who obviously had some misgiving about the conveyances, timely filed suit against Donald only, apparently seeking only money damages.[7] Decedent did not seek to have the conveyances set aside nor seek the imposition of a constructive trust upon the conveyed properties.

We disagree with Administratrix that the trial court's consideration of the existence of a prejudicial delay must be based solely on Administratrix's actions because she had no standing to proceed until her appointment. It is noteworthy that Administratrix stood in the shoes of her predecessor, Decedent's executor, Marvin, who stood in the shoes of Decedent, in instituting a cause of action, pursuant to 20 Pa.C.S. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be

---

[7] While we cannot ascertain this information from the complaint filed at 952 of 2003, G.D., the trial court **did** have the 2003 complaint before it, and we rely on the trial court's description of that suit. Trial Court Opinion, 1/22/14, at 3.

brought by or against his personal representative alone or with other parties as though the decedent were alive."). Further, after Executor Marvin's death, Administratrix, as administrator *d.b.n.c.t.a.*, "shall stand in [her] predecessor's stead for all purposes . . . ." 20 Pa.C.S. § 3326. Thus, we observe no abuse of discretion in the trial court's consideration of Decedent's non-action, as well as Marvin's non-action, when evaluating whether delay occurred herein sufficient to support the doctrine of laches.

In suggesting that the trial court erred by failing to consider Adminstratrix's acts, alone, in evaluating whether laches barred this claim and ignoring that she did not attain the ability to challenge the conveyances until she was appointed as Decedent's personal representative, Administratrix disregards the fact that she is acting on Decedent's behalf, not her own behalf. As such, it was proper for the trial court to look to Decedent's and Marvin's non-actions, as well, in evaluating whether laches precluded this claim. In determining whether a party exercised due diligence, the focus is on what the party reasonably should have known "by the use of the means of information within his reach, with the vigilance the law requires," not on what he actually knew. ***Sprague***, 550 A.2d at 188 (quoting ***Taylor v. Coggins***, 90 A. 633, 634 (1914)). "What the law requires . . . is to discover those facts which were discoverable through the exercise of reasonable diligence." ***Sprague***, 550 A.2d at 188.

-11-

As noted previously, and as expressed by the trial court, Decedent, herself, did not file suit against all Appellees, and importantly, did not seek a constructive trust on the conveyed properties. Rather, she sought money damages from her personal representative, Donald. For five years, that action languished. Upon Decedent's death, her executor, Marvin, took no affirmative action to pursue the allegations of the 2003 complaint. He did not move the action at law forward, nor did he pursue imposition of a constructive trust on the conveyed properties in equity. We have no hesitation in concluding that the nine-to-eleven-year passage of time, from the time of the conveyances until Administratrix instituted this suit in equity, constituted sufficient delay for purposes of the doctrine of laches.

Moreover, we likewise agree that Appellees were prejudiced by the delay. Prejudice may be shown "if relevant records have disappeared, if a key witness is now deceased, or cannot be located, or if the defendant changed his position based on the expectation that plaintiff did not intend to pursue the claim." *See Del–Val Electrical Inspection Service, Inc. v. Stroudsburg–East Stroudsburg Zoning and Codes Office*, 515 A.2d 75, 76 (Pa. Cmwlth. 1986) (citing *Class of Two Hundred Administrative Faculty Members v. Scanlon*, 466 A.2d 103 (Pa. 1983)).

> The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. *Commonwealth v. Gilligan*, 195 Pa. 504, 46 A. 124 (1900). Such evidence may include establishing that a witness has died

-12-

or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims. ***Kay v. Kay***, 460 Pa. 680, 334 A.2d 585, 587 (1975).

***Com. ex rel. Baldwin v. Richard***, 751 A.2d 647, 651 (Pa. 2000).

In finding prejudice herein, the trial court stated as follows:

> Next, we consider whether the delay caused prejudice to accrue to Defendants. *See Stilp* [*v. Hafer, 718 A.2d 290 (Pa. 1998)*], at 293. Of particular relevance for our consideration of this element is the fact that the two material witnesses to this case, the Decedent and Attorney Michael J. Macko, who witnessed the real estate transfers, are deceased. It is well-settled law that the doctrine of laches is applicable peculiarly where the difficulty of doing justice arises through the death of the principal participants in the transactions complained of, or of the witnesses or witnesses to the transactions, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. *In re Wallace's Estate*, 149 A. 473, 475 (Pa. 1930).
>
> The Court also notes that the passage of eleven years in relation to the upkeep, maintenance, and improvements on and to the properties at issue would cause prejudice to the Defendants if such conveyances were set aside or held in trust.
>
> Therefore, considering the absence of living witnesses to the alleged events and the sum of money and labor expended by the Defendants maintaining the properties, this Court holds that the Defendants are at a disadvantage to defend this lawsuit, that the relief requested would cause distinct prejudice, and as such the doctrine of laches must be applied to bar the claims in Plaintiff's Complaint. *Stilp*, 718 A.2d at 293; *see also Wallace's Estate*, 149 A. at 475.

Trial Court Opinion, 1/22/14, at 4–5.

We previously considered whether a delay prejudiced the appellees in

***Kern***, 892 A.2d 1. Referencing ***Stilp***, we noted the following:

Of particular relevance for our consideration of this element [of prejudice] is the fact that the two material witnesses to this case, John and Rayburn, are deceased. **It is well-settled law that the doctrine of laches is applicable peculiarly where the difficulty of doing justice arises through the death of the principal participants in the transactions complained of, or of the witnesses or witnesses to the transactions**, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. **See In re Wallace's Estate**, 299 Pa. 333, 340, 149 A. 473, 475 (1930).

The record indicates that there are no living witnesses to [the decedent's business partner's] alleged acts of subversion and control . . . . Therefore, it is clear that the absence of living witnesses to the alleged events has left Appellees at a distinct disadvantage in defending this law suit and, therefore, they are prejudiced by the delay in this case. **See Stilp**, at 134, 718 A.2d at 293; **see also Wallace's Estate**, at 340, 149 A. at 475. Therefore, we are satisfied that the trial court did not err when it determined that counts II and III of [the plaintiff's] complaint were barred by the doctrine of laches.

**Kern**, 892 A.2d at 10 (emphasis added). As we noted in another case finding prejudice:

[T]he ultimate issue . . . was the decedent's intent in drafting the trust deed. Due to the fact appellant waited until after the decedent and all of the witnesses to the creation and revocation of the trust had passed away to prosecute this action, appellees have suffered substantial prejudice by not being afforded the opportunity to question witnesses about the creation of the trust deed. In that appellant's delay was unreasonable and resulted in prejudice to appellees, we find the doctrine of laches bars appellant's claim.

**In re Estate of Devine**, 910 A.2d 699, 702 (Pa. Super. 2006) (internal citation omitted) (citing **Estate of Scharlach**, 809 A.2d at 382–383). In addition, and as noted by the trial court, all Appellees represented either in

-14-

depositions or answers to interrogatories that they have had to expend sums relating to the upkeep, maintenance, or improvements to the properties during the passage of the eleven years from the time of the conveyances until the imposition of the suit in equity, all of which would cause prejudice to Appellees if the conveyances were set aside. Trial Court Opinion, 1/22/14, at 5.

Therefore, we are satisfied that the trial court did not err when it determined that Administratrix's complaint was barred by the doctrine of laches. Consequently, we affirm the order of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2014