J-S01036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LAWRENCE J. ATROZSKIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: CHRISTOPHER M. RILEY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 838 WDA 2022 |

Appeal from the Order Entered June 22, 2022
In the Court of Common Pleas of Crawford County Orphans' Court at
No(s):  O.C. 2019-106

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: MARCH 24, 2023**

Appellant, Christopher M. Riley (Claimant), appeals the order of the Court of Common Pleas of Crawford County Orphans' Court Division (Orphans' Court) denying his petition to compel the Estate of Lawrence J. Atrozskin (the Estate) to convey real estate to him.  For the reasons set forth below, we affirm.

Lawrence J. Atrozskin (Decedent) and his wife, Onalee Atrozskin, were the owners of 42 acres of real estate in Crawford County, Pennsylvania (the Property).  Decedent's wife passed away on January 10, 2019 and her interest in the Property passed to Decedent under her will.  Decedent passed away on April 20, 2019.  Claimant is one of Decedent's and Decedent's wife's grandsons

_____

[*] Retired Senior Judge assigned to the Superior Court.

and lives in South Carolina. Claimant filed a notice of claim with the Estate on November 20, 2019, asserting that he purchased the Property from Decedent and Decedent's wife under a 2003 agreement of sale, and, on November 1, 2021, filed a petition to compel the Estate to convey the Property to him. The Estate, in its response to the petition, disputed that Claimant had bought the Property and asserted the defenses of the statute of limitations and laches.

The Orphans' Court held a hearing on the petition to compel conveyance of real estate on May 6, 2022. At this hearing, Claimant and his mother testified on Claimant's behalf[1] and the Estate called as witnesses the Executor, who was also a grandson of Decedent and Decedent's wife and a cousin of Claimant, and Claimant's younger brother.

Claimant introduced in evidence two handwritten documents that he contended document a September 2, 2003 agreement to sell him the Property for $600. N.T. at 20-24, 26-28; Petitioner's Ex. 4; Petitioner's Ex. 6. One of these documents, titled "Agreement between Christopher Riley + Lawrence + Onalee Atrozskin," is signed only by Decedent's wife and sets forth a

---

[1] Claimant's mother was permitted to testify fully concerning the alleged agreement because she was not a party to the alleged contract and did not have a direct financial interest in Claimant's claim against the Estate. N.T. at 4-5. The Orphan's Court limited Claimant's testimony based on the Dead Man's Act, 42 Pa. C.S. §5930, although it permitted him to briefly testify concerning the writings that he alleged documented the contract for sale of the Property and to testify on rebuttal after the Executor had testified. N.T. at 59, 101.

description of the Property, followed by the statement "Received payment of $600 Sept. 2, 2003." Petitioner's Ex. 4; N.T. at 20-21. The second of these documents, titled "Agreement between Chris Riley + Lawrence J. + Onalee J. Atrozskin," is signed by both Decedent and Decedent's wife and dated September 2, 2003 and states only "Paid $600 on 42 acres of land recorded in Crawford County Deed Book 383 page 221 - Oct. 12, 1956." Petitioner's Ex. 6. No copy of that deed book page was introduced in evidence.

Claimant's mother testified that Decedent and Decedent's wife sold Claimant the Property for a purchase price of $600 on September 2, 2003 and that she was present when the sale was made and the handwritten documents were written out and signed. N.T. at 20-24, 26-28. Claimant's mother testified that Claimant gave Decedent and Decedent's wife a check for $600 at that time and Claimant introduced in evidence a check stub from Claimant's checkbook showing a check for $600 dated September 2, 2003. *Id.* at 28-30; Petitioner's Ex. 7. Claimant's mother testified that Decedent and Decedent's wife did not give deeds to family members to whom they sold land because they did not want the land to be resold to strangers while they were alive and that at the time of the 2003 transaction, Decedent and Decedent's wife said that they would not give Claimant a deed at that time because they were still using the Property. N.T. at 12-14, 17, 30, 52-53. Claimant's mother also testified that after this transaction, Decedent and Decedent's wife continued to be the sole users of the Property. *Id.* at 30-31.

Claimant testified that the document signed only by Decedent's wife was an agreement between him and his grandparents for purchase of the Property. N.T. at 59. Claimant testified that he gave them a $600 check on September 2, 2003, at the time the agreement was written, but did not remember whether the payee of the check was Decedent or Decedent's wife. *Id.* at 59-60. He testified that the document signed by both Decedent and Decedent's wife was written by Decedent's wife at the same time as the document signed only by Decedent's wife. *Id.* at 61. Claimant testified that he did not expect to receive a deed before Decedent and Decedent's wife died because they wanted the land to stay in their name while they were alive. *Id.* at 60-61.

The Executor testified that in 2013, Decedent's wife gave him copies of documents concerning the land that she and Decedent owned. N.T. at 76-79. The Executor testified that the only document concerning any purchase by Claimant that she gave him or that he had seen in administering the Estate was a copy of the handwritten document relied on by Claimant describing the Property and signed only by Decedent's wife that contained all the same language but also had a 10 foot dimension in a right-of-way in the description of the Property and an additional handwritten notation below Decedent's wife's signature that stated "8 acres pd for as of 2012." *Id.* at 75-76, 79, 92-94, 97; Petitioner's Ex. 5. The Executor testified that documents that Decedent's wife gave him concerning their land included a deed for the sale of 3.2 acres adjoining the Property for $3,000 to another grandson, but did not include any

deed to Claimant, and that deeds were prepared and delivered for other family purchases while Decedent and Decedent's wife were alive. N.T. at 76-79. The Executor testified that Claimant did not pay taxes on the Property or seek to pay any portion of those taxes during the years that he handled Decedent's and Decedent's wife's finances and that he found no records that Claimant had ever paid taxes on the Property. *Id.* at 86, 95. The Estate's inheritance tax return reported that 46 acres of land owned by Decedent, consisting of the Property combined with the adjoining acres that were sold for $3000, was valued at $22,054.50. *Id.* at 83-85. The Executor further testified that in the last months of Decedent's life, Claimant's mother wanted to take Decedent to live with her in South Carolina and told the Executor that all the land belonged to Decedent and that she wanted it sold to pay for Decedent's care. *Id.* at 86-87. The Executor admitted that he did not dispute that Decedent and Decedent's wife had agreed to sell Claimant eight of the 42 acres of the Property in exchange for Claimant's payment of $600. *Id.* at 80, 81, 86.

Claimant's brother testified that around the time of Decedent's wife's and Decedent's deaths he spoke to Claimant about taxes for the Property. N.T. at 98. Claimant's brother testified that he said to Claimant that he understood that Claimant owned eight acres of the Property and that Claimant did not respond to or dispute that statement. *Id.* at 98-101. Claimant testified in rebuttal that he and Decedent's wife and Decedent had an oral agreement that "I would not discuss the total amount of anything I purchased

with any of the family" so as not to make other family members jealous. *Id.* at 102. Claimant also testified in rebuttal that the eight acres that other witnesses had discussed was different land owned by Decedent and Decedent's wife, not a part of the Property. *Id.* at 102-04.

On June 22, 2022, following submission of post-hearing briefs, the Orphan's Court issued findings of fact and conclusions of law in which it found that there was no agreement to sell the Property to Claimant for $600 or to deliver a deed for the Property to him upon Decedent's death and also concluded that Claimant's petition was barred by laches. Orphan's Court Findings of Fact and Conclusions of Law at 2-5. The Orphan's Court issued an order on the same date denying Claimant's petition to compel the Estate to convey real estate. Orphan's Court Order, 6/22/22. This timely appeal followed.

Claimant presents two issues for our review:

[1.] Whether the trial court abused its discretion and committed an error of law in ruling that notwithstanding the validity and enforceability of the Agreement to Purchase Real Estate, the Appellant, Christopher M. Riley's grandfather did not intend to pass title for 42 acres mentioned in the Agreement.

[2.] Whether the trial court abused its discretion and committed an error of law in ruling that the statute of limitations or doctrine of laches barred the relief sought by Christopher M. Riley's Petition and that Christopher M. Riley "slept on his rights" in waiting until his grandfather passed away before seeking to compel the transfer of the deed to the Real Estate.

Appellant's Brief at 12 (suggested answers omitted). This Court reviews the Orphans' Court's decision to determine whether the record is free from legal

- 6 -

error and the court's factual findings are supported by the evidence. *In re Estate of Plance*, 175 A.3d 249, 259 (Pa. 2017); *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*). Because the Orphans' Court sat as the fact finder, we cannot reverse its credibility determinations absent an abuse of discretion. *In re Estate of Walter*, 191 A.3d 873, 878 (Pa. Super. 2018); *Fiedler*, 132 A.3d at 1018. We conclude that the Orphans' Court's findings are supported by the evidence and that it did not err or abuse its discretion in either its ruling on the merits of the claim or its alternative holding that the claim was barred by laches.

With respect to Claimant's first issue, whether Claimant purchased the Property from Decedent and Decedent's wife for the price of $600 was a question of fact that the Orphans' Court resolved against Claimant. The Orphans' Court's finding that Decedent and Decedent's wife did not sell Claimant the Property is amply supported by the record. No deed for the Property was prepared or delivered to Claimant in the more than 15 years between the alleged sale in 2003 and the deaths of Decedent and Decedent's wife in 2019. N.T. at 3-4, 30, 51-52, 60-61, 78-79. Decedent and Decedent's wife continued to exercise full ownership of the Property after the alleged sale and Claimant did not pay the taxes on the Property after the sale. *Id.* at 30-31, 51, 86, 95.

The documents that Claimant contended showed an agreement to sell him the Property for $600 were ambiguous as to what the agreement was.

The document signed only by one of the owners, Decedent's wife, relates to the Property, but did not state whether $600 was the price for the Property, which was 42 acres, or a portion of an undisclosed price that was paid on that date, as it stated "Received payment of $600 Sept. 2, 2003," not that $600 was payment in full. Petitioner's Ex. 4. The document signed by both owners referred to a page of a deed book that was not in evidence and stated that the $600 received from Claimant was paid "**on** 42 acres of land," not that $600 was paid for the 42 acres of land. Petitioner's Ex. 6 (emphasis added). In addition, $600 was unusually low for the size of the Property and in comparison to the evidence concerning its value, the only document concerning the 2003 transaction that Decedent and Decedent's wife kept stated that Claimant had paid for only eight acres, and Claimant did not dispute his brother's statement to him that he had purchased only eight acres. N.T. at 83-85, 98-101; Petitioner's Ex. 5. Given the evidence that there was no act by the owners indicating intent to transfer title or relinquish ownership following the $600 payment and the evidence that the $600 was more consistent with and was for only an 8-acre portion of the Property, the Orphans' Court's did not abuse its discretion or err in concluding that there was no agreement to sell the Property to Claimant for the $600 that he paid.

Claimant argues that this determination cannot stand because Claimant's mother and Claimant both testified that the handwritten documents were an agreement to sell the Property for a total of $600 and that the absence

of a deed was due Decedent and Decedent's wife wanting to keep the Property in their names until they died and because Claimant's mother testified that Claimant contributed to the taxes paid for the Property. Those arguments are without merit. The Orphans' Court found that Claimant's mother and Claimant were not credible. Orphan's Court Findings of Fact and Conclusions of Law at 2, 4. That credibility finding was not an abuse of the court's discretion. Not only did the Orphans' Court have the opportunity to observe the demeanor of these two witnesses, neither of whom was a neutral party, but their testimony was contradicted by the testimony of other witnesses. N.T. at 76-81, 86-87, 95, 98-101.

Claimant's second issue likewise fails.[2] The defense of laches applies and bars a claim where it is shown that 1) there was a delay caused by the claimant's failure to exercise due diligence; and 2) the delay caused prejudice to the opposing party. *A.M.M. v. Pennsylvania State Police*, 194 A.3d 1114, 1118 (Pa. Super. 2018); *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014).

The Orphans' Court correctly concluded that both of these elements were satisfied here. Claimant did not assert his claim to the Property until November 20, 2019, over 16 years after he contends that he bought and fully

_____

[2] It is necessary to reach this issue despite our affirmance of the Orphans' Court's ruling on the merits because the laches ruling is broader and also bars other claims based on the 2003 transaction.

- 9 -

paid for it. That length of delay is sufficient to prove failure to exercise due diligence. *Fulton*, 106 A.3d at 133-34 (9-to-11-year delay constituted failure to exercise due diligence); *Kern v. Kern*, 892 A.2d 1, 9-10 (Pa. Super. 2005) (10-year delay constituted failure to exercise due diligence). As a result of Claimant's failure to act, both of the alleged sellers died before he asserted his claim that they sold him the Property and the Estate was denied the ability to obtain their testimony concerning the terms of a transaction that was set forth only in ambiguous handwritten documents. Prejudice exists where a witness or party to the transaction has died during the period when the claimant delayed in asserting his rights. *Fulton*, 106 A.3d at 134-35; *Kern*, 892 A.2d at 10.

Claimant argues that his delay in seeking specific performance was not a failure to exercise due diligence because he was not to receive a deed for the Property until the sellers died and therefore had no reason to seek to enforce his rights before 2019. That argument, however, is based on his and his mother's testimony, which the Orphans' Court found not credible. Orphan's Court Findings of Fact and Conclusions of Law at 2, 4. As noted above, that credibility finding was not an abuse of the court's discretion. The Orphans' Court therefore did not err in holding that Claimant's delay constituted a lack of due diligence.

For the foregoing reasons, we conclude that the Orphans' Court's factual findings are supported by the evidence and that it did not err or abuse its

discretion in holding that Claimant had not proved that he purchased the Property and that Claimant was barred by laches.[3]  We therefore affirm the Orphans' Court's order denying Claimant's petition to compel the Estate to convey real estate.

Order affirmed.

_____

[3] The Estate requests in its brief that we award it attorney fees for this appeal under Pa.R.A.P. 2744.  We do not agree that an award of attorney fees is appropriate here.  Under Rule 2744, this Court may award the appellee attorney fees if we determine that the appeal "is frivolous or taken solely for delay or that the conduct of the [appellant] is dilatory, obdurate or vexatious." Pa.R.A.P. 2744.  An appeal is not frivolous simply because it lacks merit. **Fulano v. Fanjul Corp.**, 236 A.3d 1, 16 n.17 (Pa. Super. 2020); **U.S. Claims, Inc. v. Dougherty**, 914 A.2d 874, 878 (Pa. Super. 2006).  Rather, the appeal is frivolous only if has no basis in law or fact.  **Fulano**, 236 A.3d at 16 n.17; **U.S. Claims, Inc.**, 914 A.2d at 878.  The Estate argues that Claimant's appeal is frivolous because it is based on challenges to the Orphans' Court's credibility determinations.  An appeal may be found frivolous and attorney fees may be awarded under Rule 2744 where the appellant's arguments are based entirely on challenges to the trier of fact's credibility determinations. **Canal Side Care Manor, LLC v. Pennsylvania Human Relations Commission**, 30 A.3d 568, 577-78 (Pa. Cmwlth. 2011); **Reinhart v. Department of Transportation, Bureau of Driver Licensing**, 954 A.2d 761, 767-69 (Pa. Cmwlth. 2008). That, however, is not the case here.  Although Claimant has asserted arguments based on his and his mother's testimony despite the fact that the Orphans' Court found their testimony not credible, he does not base his appeal entirely on attacks on the court's credibility determinations, but also argues that the handwritten documents are sufficient to prove his claim.  Appellant's Brief at 18-19, 23-29.  While we have concluded that this argument fails, we cannot say that the appeal as a whole is so lacking in any basis in law or fact that it can be held frivolous.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/24/2023