J-A23036-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AGNES L. POLI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE A. POLI, | : | |
| | : | |
| Apellant | : | No. 1989 WDA 2015 |

Appeal from the Order Entered December 16, 2015,
in the Court of Common Pleas of Allegheny County,
Family Court, at No(s): FD 04-005021-002

BEFORE: LAZARUS, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED NOVEMBER 17, 2016**

Lawrence A. Poli (Husband) appeals from the December 16, 2015, order granting the petition for enforcement of equitable distribution order filed by Agnes L. Poli (Wife).  We affirm.

Husband and Wife married in 1985 and separated in 2004.  On September 20, 2004, Wife filed a complaint in divorce, seeking equitable distribution of the parties' assets.

> The parties had a two-day trial in 2007 on their economic claims before Master Patricia Miller ("Master Miller"), who issued a recommendation to which exceptions were filed. The Honorable Lawrence W. Kaplan disposed of said exceptions by remanding the matter to Master Miller.

> At issue on remand was the marital value of Husband's interest in certain assets of his mother's estate ("Estate"). Husband's mother, Dolores M. Poli, died on April 21, 2001. The executrix and heirs of the Estate executed a settlement agreement ("Agreement") in May 2002, wherein Husband, *inter alia*, was entitled to receive 50% of any real estate ("Real

*Retired Senior Judge assigned to the Superior Court.

Estate") owned by the former Poli's Restaurants, Inc. At the time of the Agreement, (i) Husband's 50% interest in the Real Estate was valued at $435,000.00, and (ii) the total amount of assets Husband was expected to inherit was $844,676.00.

On remand, Master Miller recommended that "[a]t the time of closing on the sale of [the Real Estate], [H]usband shall pay [W]ife $146,100, which is 50% of the marital increase in value." Additional exceptions were filed to the recommendation, which the parties resolved via consent order with the Honorable Beth A. Lazzara on September 18, 2009 ("Consent Order").

The Consent Order provided, in pertinent part, as follows:

A. [Husband] shall pay [Wife] the following amounts based on his net inheritance from his mother's estate, the Estate of Dolores M. Poli ... ;

>    a. $120,000 to [Wife], if his net inheritance is $400,000 or greater;
>
>    b. $100,000 to [Wife], if his net inheritance is between $300,000-$399,000;
>
>    c. $75,000 to [Wife], if his net inheritance is between $200,000-$299,000; and
>
>    d. $50,000 to [Wife], if his net inheritance is less than $200,000.

B. Said amount shall be paid by the Estate directly to [Wife] prior to [Husband], his successors or heirs, receiving from the Estate any and all distributions, inheritances, advances, and /or monies of any kind; ... .

C. If [Husband's] net inheritance is $50,000 or less, the Estate shall pay [Wife] as much as possible up to $50,000 from [Husband's] inheritance; ... .

D. [Husband] shall not sell, gift, assign, or otherwise transfer his inheritance from said Estate, whether gross or net; ....

F. If [Husband's] net inheritance is less than $200,000, [Husband] shall pay [Wife] $50,000 even if his net inheritance is minimal or he has no inheritance ... .

The Real Estate sold at a tax sale in 2013 for an amount almost equivalent to the taxes owed on the property. The Estate then closed on March 10, 2014, and by letter dated June 5, 2014, Wife inquired into the status of Husband's inheritance. By letter dated June 10, 2014, Wife was informed that Husband had not received any additional inheritance, apparently as a result of the failure to realize a profit from the sale of the Real Estate.

On February 11, 2015, Wife filed a Petition for Enforcement of Equitable Distribution Order ("Petition") seeking enforcement of the Consent Order. Wife requested payment in the amount of $120,000 because she believed, pursuant to the Agreement, that Husband's inheritance exceeded $844,000. However, after conciliation with the Court on the Petition, Wife reduced the amount she sought to $50,000.

The parties briefed the various issues presented by the Petition and subsequently appeared before [the trial c]ourt for a hearing on December 1, 2015. Following hearing, [the trial c]ourt granted the Petition, entering an order on December 16, 2015 (the "Order") that required Husband to pay Wife $50,000 and $3,000 in counsel fees. Husband filed a timely appeal and Pa.R.A.P. 1925(b) statement from the Order. [The trial court then filed an opinion pursuant to Pa.R.A.P. 1925(a).]

Trial Court Opinion, 2/22/2016, at 1-4.

Husband raises three issues for our review.

I. Whether the trial court erred in granting wife's petition to enforce equitable distribution order and in failing to grant husbands' motion to dismiss.

II. Whether the trial court erred in permitting the introduction of and relying on parol evidence.

III. Whether the trial court erred in failing to rule that Wife received her payment from Husband during the parties' marriage when Husband received, and expended on the parties, amounts from his inheritance.

Husband's Brief at 5 (trial court answers and unnecessary capitalization omitted).

We review these issues mindful of the following principles.

It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)).

Husband's first claim of error is multifold. We begin with his contentions that the trial court (1) misinterpreted the plain language of the Consent Order and (2) erroneously held that it was a continuing contract; thus, (3) "Wife's enforcement action was untimely and barred by the statute of limitations." Husband's Brief at 14-29. We note that resolution of these issues necessarily requires discussion of Appellant's second issue on appeal: whether the court "erred in permitting the introduction of and relying on parol evidence" in interpreting the Consent Decree. Husband's Brief at 37-39. We address these claims mindful of the following.

- 4 -

A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake ….

It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used. Conversely, when the language is ambiguous and the intentions of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does not apply to the admission of oral testimony to show both the intent of the parties and the circumstances attending the execution of the contract.

A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court must determine as a question of law whether the contract terms are clear or ambiguous. When acting as the trier of fact, the court also resolves relevant conflicting parol evidence as to what was intended by the ambiguous provisions, examining surrounding circumstances to ascertain the intent of the parities.

*Lang v. Meske*, 850 A.2d 737, 739–40 (Pa. Super. 2004) (citations and quotation marks omitted).

Further,

[a] question regarding the application of the statute of limitations is a question of law. … Our standard of review over

questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

* * *

The statute of limitations for contracts is four years. 42 Pa.C.S. § 5525(a)(8). [T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises. However, [w]hen a contract is continuing, the statute of limitations will run either from the time the breach occurs or when the contract is terminated. The test of continuity, so as to take the case out of the operation of the statute of limitations, is to be determined by the answer to the question whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts.

**K.A.R. v. T.G.L.**, 107 A.3d 770, 775–76 (Pa. Super. 2014) (citations and quotation marks omitted).

Instantly, the trial court determined that the Consent Order was a continuing contract on the basis that the unambiguous, plain language of the document, specifically the term "net inheritance," was evidence of the parties intent that the sale of the Real Estate and closing of the Estate was to be the triggering event for compliance with the Consent Order. Trial Court Opinion, 2/22/2016, at 6-9. Accordingly, the court concluded that Wife's petition, filed within four years of the date the Estate closed, was not barred by the statute of limitations. The court explained its rationale as follows.

The Consent Order is not reasonably susceptible to multiple interpretations. It is, therefore, not ambiguous. The Consent Order clearly states that Husband shall pay Wife differing amounts of money based upon "his net inheritance from

- 6 -

[his mother's] estate." It also clearly states that even if Husband's net inheritance is minimal or zero, he must pay Wife $50,000. Consequently, the Consent Order's plain language required Husband to make payments to Wife (i) pursuant to the sliding scale adopted therein and (ii) based upon his net inheritance, which could not be known until after the Real Estate sold and [the] estate closed.

[The trial court] makes no finding on the actual value of Husband's "net inheritance." Wife, as set forth above, maintains that pursuant to the Consent Order's terms she is entitled to $50,000. Husband does not dispute that amount. Instead, he contends that the four year statute of limitations applicable to contract actions bars Wife's ability to enforce the Consent Order and collect any monies, including $50,000. According to Husband, Wife was required to seek enforcement of the Consent Order, which was entered in 2009, by 2013. Her Petition, presented in February 2015, is thus too late, Husband contends. Such an argument appears to be premised upon the notion that the value of Husband's net inheritance was known at the time the parties entered into the Consent Order and that Wife, therefore, had no basis to wait until the Real Estate sold or [the] estate closed before she presented her Petition.

The plain language of the Consent Order belies Husband's position. Not only does the Consent Order's use of "net inheritance," rather than, for example, the "current valuation of Husband's inheritance" or some other similar language, defeat Husband's argument, but so too does the Consent Order's use of a sliding payment schedule. If the parties were to simply use the estate's or the Master's, or some compromised value of Husband's inheritance at the time of the Consent Order to determine Husband's payment obligations to Wife, then they would have had no need to agree to an indefinite payment amount.

The [trial c]ourt believes, and the plain language of the Consent Order supports, that, as set forth above, Husband's net inheritance - *i.e.*, his final or totally conclusive inheritance amount, which was the payment triggering event of the Consent Order - could not be known until after the Real Estate sold in 2013 and [the] Estate closed in 2014. Only such an interpretation of "net inheritance" acknowledges the actual

- 7 -

meaning of those terms as well as the reality that the parties created a sliding, and indefinite, payment schedule for resolution of the exceptions to Master Miller's recommendations. The Consent Order is thus a continuing contract, … and Wife was under no duty to present her Petition until after the Real Estate sold and the Estate closed, *i.e.*, until after it could be determined what Husband's net inheritance actually was. Because Wife presented the Petition within four years of those events, it was timely pursuant to 42 Pa.C.S. § 5525(a)(8).

Trial Court Opinion, 2/22/2016, at 6-8 (citations omitted).

We find no error in the trial court's conclusions that the unambiguous the language of the Consent Order established both a sliding scale and a triggering event for payment of Husband's net inheritance. Accordingly, as the duties of Husband were ongoing, the contract was properly classified as "continuing" and the statute of limitations did not bar Wife's claim. **See Miller v. Miller,** 983 A.2d 736, 742 (Pa. Super. 2009) (finding that a postnuptial separation agreement, which provided that husband was solely responsible for the mortgage, taxes and insurance on the marital property until it was sold, was a continuing contract).

Related to the above analysis, in his second claim of error, Husband alleges that the trial court erred in admitting and relying on parol evidence to interpret the Consent Order. Specifically, Husband argues that, because neither party argued that the Consent Order was ambiguous, the trial court should not have permitted Wife to testify as to her understanding of the meaning of "net inheritance," Husband's Brief at 38, nor should it have permitted Wife to cross-examine Husband as to his understanding of the

term, *id*. However, the trial court made clear that it found the language of the Consent Order to be clear and, consequentially, did not rely on any parol evidence in reaching its conclusion. Trial Court Opinion, 2/22/2015, at 8 ("Enforcing the plain language of the unambiguous Consent Order, i.e., a continuing contract, was (i) appropriate under the circumstances, (ii) did not violate any statute of limitation, and (iii) does not require the Court to rely on any parol evidence."). Accordingly, Husband's argument to the contrary is without merit and he is not entitled to relief on this issue.

We turn to the fourth issue subsumed in Husband's first claim of error: that Wife's enforcement action was precluded by the doctrine of laches. Husband's Brief at 29-34.

> The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared. The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual and is determined by examining the circumstances of each case.
>
> We have outlined the parameters of the doctrine of laches as follows:
>
> > Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and

is determined by examining the circumstances of each case.

Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations.

Moreover,

[t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

*Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014) (citations and quotation marks omitted).

Consistent with his contention that the Consent Order was not a continuing contract and was enforceable at the time it was entered, Husband argues that laches applies herein because Wife knew in 2009 the amount of Husband net inheritance yet "waited over *five years and four plus months* to file her enforcement action." Husband's Brief at 31 (emphasis in original). The trial court disagreed, stating as follows.

Here, Husband's net inheritance became known after the Real Estate's sale in 2013 and the closing of [the] Estate in 2014. The [trial c]ourt does not believe that Wife, who made inquiry about the status of Husband's inheritance less than three months after the Estate closed and presented the Petition less than one year after the Estate closed, improperly delayed in seeking enforcement of the Consent Order. Moreover, Husband has not

directed [the trial court] to any deceased or missing witness as a result of the timing of Wife's Petition. Nor has he identified any missing records resulting from any alleged delay. He also failed to present credible testimony at the Hearing of some other type of prejudice he suffered by Wife's presentation of the Petition in 2015.

Trial Court Opinion, 2/22/2016, at 11.

Accordingly, the court determined that Husband had failed to present proof of a delay or prejudice such that laches would apply. We agree. As previously stated, the valuation of Husband's net inheritance, and calculation of the applicable payment to Wife under the terms of the Consent Order, could not be determined until sale of the Real Estate and closure of the Estate. The Estate closed on March 10, 2014, and Wife inquired into the status of Husband's inheritance on June 5, 2014. By letter dates June 10, 2014, Wife was informed as to the details of the sale. Her petition to enforce was filed eight months later, on February 11, 2015. We note that Husband was under a duty to pay Wife her portion under the Consent Order once the Estate was settled and failed to do so during those eight months. Although we are not bound by the trial court's determination, under these circumstances, we cannot agree with Husband that Wife sat on her rights or improperly delayed these proceedings.

Moreover, we reject Husband's argument that he was prejudiced. Claiming Wife had tacitly agreed by "established conduct" that "she had already received more than her share of his inheritance during the

marriage," Husband claims that he relied on Wife's "inaction in ordering his economic affairs and meeting his financial obligations over [the period from the date the Consent Order was entered in September of 2009 until the closure of the Estate], with no indication that Wife would seek to pursue this particular claim." Husband's Brief at 32. The language of the Consent Order belies these claims. That it took a lengthy period of time to sell the Real Estate and close the Estate (during which time Wife **could not** take action under the terms of the Consent Order as Husband's net inheritance was not established) and that Husband did not during the ensuing four years make appropriate arrangements to comply with the Consent Order once the Estate was closed, does not serve to prejudice Husband such that laches applies. Accordingly, we find no error in the conclusions of the trial court.

We now address the final issue subsumed in Husband's first claim of error: that Wife's enforcement action was precluded by the doctrine of equitable estoppel. Husband's Brief at 34-36.

The doctrine of equitable estoppel requires proof that "a party by acts or representation intentionally or through culpable negligence[ ] induce[d] another to believe that certain facts exist and [that] the other justifiably relie[d] and act[ed] upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." **Guerra v. Redevelopment Auth. of City of Philadelphia**, 27 A.3d 1284, 1290 (Pa. Super. 2011) (citation omitted).

Instantly, Husband claims that he relied detrimentally on Wife's implied position that "she had received her share of Husband's inheritance during the parties' marriage and … was not going to pursue any action relating to the … Consent Order." Husband's Brief at 36. In support of his argument, Husband cites to testimony elicited at the Enforcement Hearing regarding the hearing before Master Miller, where Wife "presented evidence to value the interest of the inheritance" and "took the position in that proceeding that [Husband] had received his inheritance and that she is entitled to any increase in value." N.T., 12/1/2015, at 45. We are unconvinced by the evidence upon which Husband relies. The Consent Order was entered after the parties' master hearings. If the parties had believed the issue of Husband's inheritance had been settled previously, the Consent Order would not have been necessary. As explained above, Wife's alleged "inaction" was due to the fact that the triggering events for enforcement of the Consent Order had yet to occur. Accordingly, we find no error in the trial court's conclusion that Husband "did not adduce sufficient credible testimony … to establish either that Wife induced him into believing he need not comply with the Consent Order or that he relied on such inducement." Trial Court Opinion, 2/22/2016, at 10.

Finally, we turn to Appellant's third claim of error, that the trial court erred in failing to rule that Wife received her $50,000 payment from Husband during the parties' marriage. Husband's Brief at 39-40.

Specifically, Husband claims that, during the marriage he liquidated his interest in his mother's IRA accounts ("the only money [he] actually received from his inheritance"), which he used to meet the parties' living expenses during the marriage. *Id.* at 40. Thus, he claims his obligation to Wife is satisfied.

We disagree. Again, if Husband's understanding of the parties' financial dispute were correct, the Consent Order would have been unnecessary. Moreover, the Consent Order's focus on Husband's net inheritance belies his argument herein. Further, we note that Husband admitted during the Enforcement Hearing that provision F of the Consent Order awards Wife $50,000 in the event his inheritance is less than $200,000 or if he receives no inheritance at all. Consent Order; N.T., 12/1/2015, at 51. Accordingly, we discern no abuse of discretion in the trial court's findings on this issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2016